### THATCHER v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 5, 1915.)

#### No. 2314.

On application for rehearing. Denied.
For former opinion, see 212 Fed. 801.

Before DENISON, Circuit Judge, and COCHRAN and SANFORD, District Judges.

PER CURIAM. Mr. Thatcher's application for a rehearing presents several criticisms of the opinion of the court with such insistence as to make proper a further memorandum with respect to some of them, although no attempt will be made to comment upon all. They are thought to be sufficiently covered hereby and by the opinion.

It is said that the opinion confused different circulars, and gave to a statement in one a meaning derived by treating as context another statement in a separate circular. The record contains four complete

circulars, A, B, C, and D. Our opinion does associate statements specifically taken from Exhibit A and Exhibit B; but, in so far as this association is inaccurate, it is immaterial, because (if for no other reason) Exhibit B alone contains every statement recited in our opinion, and in substantially the mutual relationship and with the necessary interpretative effect which we attributed thereto.

It is said that our statement of percentages was erroneous, and that the charge in the circular that there were "one hundred such cases" was only one-half wrong, instead of, as we said, three-fourths. This may not be vitally important; but further consideration demonstrates that our arithmetic was accurate. We think it clear enough that both the circular and our opinion referred to the general class of personal injury cases against private corporations. Such cases against individuals certainly would not, and those against municipal corporations would not naturally, be included; and the circular, after an enumeration which would not include cases against municipal corporations, but plainly refers only to those against private corporations, says: "From the records of a hundred such cases, we cite a few at random." The Gravelle Case is included both in the general list and in the special list. No other one of the cases specially cited was included in the general list. The Gravelle Case was hence, as inferentially appears from the opinion, not considered in the groups with which it was compared. For this reason, the opinion used the numbers 70, 10, and 80; and we see nothing to correct.

With reference to the Reiter-Hudson matter: The opinion recites the charge in the instant proceeding as "bringing suit upon notes which he knew had been paid, and as part of a scheme to defraud a former client." This recital is, in one respect, wrong. The former client was Milburn, and the charge was that this act was done "with intent to deceive the court in which the action was begun, and for the purpose and with the intent of deceiving and defrauding said George R. Hudson."

The error in the recital does not seem material. As explained in the opinion, the act necessarily operated to injure unlawfully the former client, Milburn; and if conduct by an attorney was intended to and necessarily operated to deceive the court, it is not important in just what words it is additionally characterized.

The rehearing petition, with respect to the Reiter-Hudson matter, is largely based on the theory that Milburn, a former client, had authorized the suit which was brought in Reiter's name. A review of the evidence confirms the statement of the opinion to the contrary; such authority had not been given, but had been refused. The earlier correspondence between Milburn and Thatcher doubtless contemplated that this course would be taken, and Milburn even executed, and sent to Thatcher for delivery to Reiter, an assignment of Milburn's interest in the notes; but Thatcher refused to accept this assignment, and drafted others, which Milburn refused to execute. After much correspondence and a clear failure to reach any meeting of minds, because no satisfactory plan had been reached for "protecting" Milburn and his friend, Knapp, to whom Milburn's interest had perhaps been transferred, the correspondence ended with these letters:

From Thatcher's letter of September 9, 1904: "Your letter of August 12th came during my absence from the city. I think it best that you have your own attorney draft such papers as are necessary to be signed by Mr. Knapp, transferring the Hudson notes to Reiter. In fact, I think the notes are already indorsed without recourse and can be transferred by delivery. If you will consent to my proceeding in Reiter's name, will do so, and not ask for any papers at all. Would like to make some progress in this matter."

From Milburn's answer of September 12, 1904: "Answering your favor of the 9th, will say that, if a way can be devised for going to work on this matter which will absolutely hold Mr. Knapp and myself harmless, all right. We will then sign papers authorizing you to go on. If this cannot be done, the matter will have to be dropped."

Nothing occurred, after this, for more than two years, and until Thatcher entered into his contract with Reiter, accepting employment from Reiter to collect for him from Hudson all that can be recovered on these notes "now owned by the said Reiter." The fact that suit was brought by Mr. Thatcher without authority from Milburn, and in the teeth of Milburn's instructions to drop the matter, is clear.

Complaint is made of the opinion's reference to Mr. Thatcher's contract with Milburn for a contingent fee of two-thirds of the amount recovered on these notes, because, in fact, his final contract with Reiter gave him a contingent fee of only one-fourth, and because, in fact, he turned over to Reiter, without any deduction, all that he did later collect. The language of the opinion obviously refers to the contract existing at the early stage of the correspondence, and correctly states the amount of the contingent fee there provided; but if the opinion causes the impression that Mr. Thatcher's final bringing of the suit was influenced by the expectation of getting 66 per cent., instead of 25 per cent., of the recovery, and so, as the rehearing petition says, becomes a charge that he was "greedy," it is unjust to Mr. Thatcher, and the impression should be corrected.

The real purpose and effect of the discussion of the Reiter-Hudson matter in the opinion should not be misapprehended. It was not stated to be the ground for sustaining the judgment below; indeed, we suggested our opinion that for this matter alone the extreme penalty imposed would have been too severe. Grounds requiring the affirmance of the judgment had already been stated. Discussion of the Reiter-Hudson matter might have been omitted, save for the extent to which it had figured in the criticism of the District Judge found in Mr. Thatcher's briefs. For this reason, we were justified in referring to a phase of the matter which had not been formulated in the charges below, but which appeared in connection with Mr. Thatcher's defense. We have carefully reviewed what the opinion says on this subject, and are satisfied that its comments are well within bounds. That the judgment sought in that case could rightfully depend only on this theory of Milburn's fraud was obvious on the undisputed facts; that, when recovered, it did in fact so depend, appears from Judge Wanamaker's opinion. Our reference to the Boone opinion served to indicate our view of the matter, but was not intended to be the basis of our judgment.

The rehearing application has been denied.