[Crim. No. 1964. In Bank.—January 27, 1917.]

## In the Matter of WILLIAM HUMPHREY, an Attorney and Counselor at Law.

Attorney at Law—Duty With Respect to Criticism of Courts.—
Attorneys at law are at all times held to the strictest observance of the principles of truth, honesty, and fairness, especially in their criticism of the courts, to the end that the public confidence in the due administration of justice be upheld, and the dignity and usefulness of the courts be maintained.

Id.—Moral Turpitude—Charging Misuse of Judicial Office—Judge Candidate for Re-election—Publication not Privileged.—An attorney at law is guilty of moral turpitude warranting his disbarment in publishing an article which in effect wantonly charged a judge of the superior court with knowingly misusing his judicial office for the purpose of bringing financial gain to a litigant, and the fact that the judge was at the time a candidate for re-election does not make the publication privileged.

APPEAL from a judgment of the Superior Court of San Diego County disbarring an attorney at law. J. P. Wood, Judge presiding.

The facts are stated in the opinion of the court.

William Humphrey, *in pro. per.*, for Appellant.

E. H. Lamme, and E. Dempster McKee, for Respondent.

LAWLOR, J.—The appeal herein was decided by the district court of appeal for the second district. An application was made to this court for a hearing. It was granted for the reason that we entertained some doubt whether the misconduct of the appellant amounted to "moral turpitude," within the meaning of subdivision 5 of section 287 of the Code of Civil Procedure. Upon a consideration of that question we have reached the conclusion that the district court correctly disposed of it. The opinion, which is written by Mr. Presiding Justice Conrey, is, in part, as follows:

"In this proceeding respondent was tried before the superior court upon an accusation preferred against him by the Bar Association of San Diego. The court found that the

allegations of the accusation were true and that the conduct of the respondent in the premises constituted an act of moral turpitude. Thereupon it was ordered and adjudged that, for a period of two years, his name be stricken from the roll of attorneys and counselors at law, and that for that period he be precluded from practicing as such attorney and counselor at law in any court of this state. From that judgment the respondent prosecutes this appeal.

"In October, 1914, Hon. W. R. Guy, a judge of the superior court in and for the county of San Diego, was a candidate for re-election. Respondent caused to be printed and published a circular or card containing an article prepared under a heading, 'W. R. Guy's Conduct as Judge Disclosed.' Then followed a purported statement of proceedings had and judgments rendered by Judge Guy in two cases. In the first case, following a purported statement of the facts, the circular closed as follows: 'Do you want that kind of a man for juvenile judge? What will be the effect on young lawyers who look to the judge for example? Answer with your votes November 3d.' In the second case, following a purported statement of facts, the circular closed as follows: 'Any person who has the intelligence of a common monkey knows that said fund could not become the property of the justice of the peace, or the bank, or any other person without the consent of the owner. Observe that the money was released from custody of the justice and the bank notified of it and a request made for its return by the owner. Judge Guy used his judicial office to enable said bank to keep that money and also refused a new trial and refused to allow any other judge to try the case. Do you want that kind of a man for judge of juveniles? What example will be set to the young who look upon a judge of a superior court as some great personage? Answer with your votes November 3d.'

"Answering the accusation, respondent admits that he published the circulars or cards in question and asserts that they contain only the truth. He denies that the cards were printed wrongfully or unlawfully or maliciously, or with any other thought than to properly advise voters at the election. Appellant has brought up with his appeal a bill of exceptions showing the proceedings at the trial upon this accusation against him, and including the evidence upon which the court below has based its finding that the publica-

tion made by respondent was false and malicious, and involved moral turpitude on the part of the publisher. Bearing in mind the rule that the findings of the superior court upon matters of fact are not subject to review where they have any substantial support in the evidence, we will briefly compare the charges printed by the respondent concerning the two cases above mentioned with the facts as they occurred in the trial of those cases.

"As to the first case, we find that the statement of facts in the circular of respondent is as follows: 'The administrator of David A. Smith brought action against an attorney at law to recover $350. The facts stated by the administrator and admitted by demurrer of said attorney were: That said defendant was the attorney and confidential adviser of said Smith. That while said Smith was in a dying condition, under the effect of opiates and incapable of transacting business or comprehending the nature thereof, said attorney, in conspiracy with a confidential nurse of said Smith, induced said Smith to deliver to said attorney $350, which sum said attorney and said nurse falsely pretended to said Smith was for the defense to an action which would be commenced against said nurse. That said false representations were made to said Smith for the purpose of obtaining said sum without consideration, and that no consideration was received by said Smith for said money. That said administrator demanded of said attorney the return of said sum but no part of it was ever returned.' The real title of the above-mentioned case was O. K. Bullard, Administrator, v. L. E. Dadmun. The first count in that complaint contains a statement of facts which evidently is the statement of facts referred to in the circular, although there are differences between the two statements of facts. For instance, although the complaint alleges that Dadmun was an attorney at law, it does not allege that he was the attorney of said Smith; and, although the complaint says that Dadmun had the confidence of decedent and that decedent relied upon his representations, it does not say or show in any manner that Dadmun was 'confidential adviser' of Smith, or engaged to advise him at all about the affairs of said Smith. The second count of the complaint is pleaded as a common count for money had and received by defendant for the use of the decedent. A demurrer, both general and special with respect to each count of the complaint, was filed by the de-

fendant Dadmun and came on for argument before Judge
Guy, who sustained the demurrer. The court did not refuse
to the plaintiff the right to further amend his complaint, but
the plaintiff, who was represented by Mr. Humphrey, elected
to stand on said amended complaint. Thereupon the court,
as was necessary under its ruling on the demurrer, ordered
dismissal of the action.

"We are not called upon to say whether the order sustaining
the demurrer was or was not legally correct. It is sufficient
to say that debatable questions were presented; that the judge
in the performance of his official duty rendered his decision
thereon; and that there is absolutely nothing to show, or
tending to show, that the conduct of the judge therein was
such as to call for the suggestion or intimation that this con-
duct showed him to be the kind of a man whose incumbency
in the judicial office would have injurious effect 'on young
lawyers who look to the judge for example.'

"But while the portion of respondent's published article
which referred to the Smith case does not appear to have been
justifiable in so far as it was intended as a reflection upon the
character of the judge, we are inclined to the opinion that it
would not alone be sufficient to show moral turpitude on the
part of the publisher or constitute cause for disbarment. As
to that case the respondent avoided the use of language neces-
sarily charging the judge with a willful misuse of his office.

"This leads us to the next case described in said pub-
lished circular, concerning which the circular reads as follows:
'Here's Another Case: The undisputed evidence in a case
tried in Judge Guy's court July 8, 1913, was as follows: A
defendant under arrest in justice court deposited $25 for bail,
which case came before the justice of the peace of National
Township. Said justice deposited in his name as justice of
the peace said fund with the People's National Bank of
National City, and told said bank that said fund was left with
him as bail money, and also told said bank from whom he
received said fund. Said justice died shortly thereafter. The
successor, Justice Sherman, set said case for trial and on the
hearing thereof February 4, 1913, dismissed the case, made
an order releasing said bail money, and notified said bank in
writing of such release and dismissal. Said defendant deliv-
ered to said bank in person said written notice, requested
payment to him of said bail money; said bank refused pay-

ment. Said defendant, after waiting four days, brought suit and obtained judgment in the justice's court for said money. Said bank appealed. Judge Guy tried the case on appeal, and on the above undisputed evidence gave judgment for said bank with costs of both trials. Said bank by Guy's decision got the money and said defendant who owned the money lost it with cost of two trials.' Then followed the language which we have quoted heretofore, beginning with the words, 'Any person who has the intelligence of a common monkey,' etc. The evidence shows that William Humphrey, being under arrest in a justice's court, deposited $25 for bail, which sum was deposited in bank in an account which the justice kept in his own name as justice of the peace; that the justice died while the action against Humphrey was pending; that the case was later tried by another justice and the court made an order dismissing the action against Humphrey and ordering that his bail money be released. Thereupon the respondent filed his action against the bank to recover from it the sum of $25, thereby attempting to establish direct responsibility of the bank to him as owner of that sum. Judgment having been rendered in favor of Humphrey and against the bank in the justice's court where the case was tried, the bank appealed to the superior court and the case came on for trial before Judge Guy. That judge appears to have reached the conclusion that the plaintiff in that action had no cause of action against the bank, and that his claim should have been presented to the administrator of the estate of the deceased justice. Here again we are not called upon to determine whether the judgment rendered by Judge Guy was legally right, although we do not observe in it any ground for criticism. For present purposes, it is, however, sufficient to say that the conduct of Judge Guy in rendering the judgment which he did render in that case, as shown by the record here produced, is not subject to the slightest criticism which could in any way affect his character as a judge. Nevertheless, the respondent took it upon himself to publish a statement purporting to set forth the facts of that case and accompanied such statement with a distinctly libelous charge which, in our opinion, amounted to a statement that Judge Guy, with full knowledge that plaintiff Humphrey was entitled to a judgment in his favor, had 'used his judicial office to enable said bank to keep that money.' In other words, the respondent

being then and there an attorney at law and under an obligation and sworn duty 'to maintain the respect due to the courts of justice and judicial officers' (Code Civ. Proc., sec. 282), wantonly charged that a judge of the superior court before whom he was practicing had knowingly misused his judicial office for the purpose of bringing financial gain to a litigant. . . . ''

The making of such a charge, under the circumstances here existing, was manifestly the willful making of a false charge, and cannot be justified as a privileged publication under the claimed excuse that the subject of attack was at that time a candidate for re-election to a judicial office. (Civ. Code, sec. 47, subd. 3.)

It is contended by the respondent, in his petition for a hearing by this court, that he "had the undoubted right to state his conclusions; others could draw their conclusions as to whether the respondent or Judge Guy's conclusions were the more logical, reasonable, or honest." But the concluding statements of the circular are obviously charges, at least by innuendo, against the integrity and fitness of the judge, and must be presumed to have been so intended. "While attorneys have the widest latitude in differing with, and criticising the opinions of, the courts, yet when they resort to misrepresentation and unwarranted assaults upon the courts whose officers they are, they violate their duty and obligation." (6 C. J. 594, sec. 54.) Moral turpitude is misconduct by an attorney in reference to his duties and obligations as such attorney—conduct, in fact, which is contrary to justice, honesty, modesty, or good morals. (Bouvier's Law Dictionary. See *In re Coffey,* 123 Cal. 522, [56 Pac. 448].) "An attorney," it has been stated, "is guilty of misconduct whenever he so acts as to be unworthy of the trust and confidence involved in his official oath, and is found to be wanting in that honesty and integrity which must characterize members of the bar in the performance of their professional duties." (2 Thornton on Attorneys at Law, ed. 1914, sec. 774.) We are aware that there is a line of authorities which place no limit to the criticism members of the bar may make regarding the capacity, impartiality, or integrity of the courts, even though it extends to the deliberate publication by an attorney capable of correct reasoning of baseless insinuations against the intelligence and integrity of the highest courts.

(See *State Board etc.* v. *Hart,* 104 Minn. 88, 15 Ann. Cas. 197, and note, [17 L. R. A. (N. S. )585, 116 N. W. 212] ; *Ex parte Steinman,* 95 Pa. 220, [40 Am. Rep. 637].) In the first case mentioned it was observed, for instance: "It may be (although we do not so decide) that a libelous publication by an attorney, directed against a judicial officer, could be so vile and base and of such a nature as to justify the disbarment of its author." Yet the false charges made by the attorney in that case were of a graver character than those made by the respondent here. But, in our view, the better rule is that which requires of those who are permitted to enjoy the privilege of practicing law the strictest observance at all times of the principles of truth, honesty, and fairness, especially in their criticism of the courts, to the end that the public confidence in the due administration of justice be upheld, and the dignity and usefulness of the courts maintained. (*In re Collins,* 147 Cal. 8, 19, [81 Pac. 220] ; 2 Thornton on Attorneys at Law, c. 29; 2 R. C. L., pp. 1089, 1092.) In the proceedings entitled *In re Thatcher,* (80 Ohio St. 492, [89 N. ). 39–90], and *In re Thatcher,* 190 Fed. 969–1015, affirmed 212 Fed. 801, [129 C. C. A. 255], rehearing denied 219 Fed. 173, [135 C. C. A. 71], whose facts, in many respects, parallel those shown here, the supreme court of Ohio and the federal court thoroughly considered the authorities and reached conclusions in accord with our own. It is remarked in the Ohio case: "As an attorney, or as a citizen, he had the right to criticise the judgments and conduct of the judges in a decent and respectful manner, but no man has a right at any time to degrade and intimidate a public officer, and bring his office into contempt, by the publication of libelous matter imputing to him impeachable offenses; and the fact that the officer is a candidate for re-election does not remove the ban." And again: "Nobody knows better than a lawyer that, while judicious criticism is a necessary and effective means when used to keep the judges mindful of their duties, and to prevent the selection of inefficient judges when judges are chosen by the people, yet when carried beyond the limit of truth and fairness, nothing is more certain to destroy the judicial balance of timid judges, and to effectually impair the impartial administration of justice." (See, also, *Ex parte Wall,* 107 U. S. 265–325, [27 L. Ed. 552, 2 Sup. Ct. Rep. 569].) It is our opinion that the trial court was warranted

in finding that the publication of said articles constituted moral turpitude.

Judgment affirmed.

Sloss, J., Lorigan, J., Henshaw, J., Melvin, J., and Shaw, J., concurred.