[Crim. No. 984. Second Appellate District, Division Two.—October 19, 1923.]

In the Matter of the Proceedings for the Disbarment of M. O. GRAVES, Attorney and Counselor at Law.

[1] ATTORNEY AT LAW—ATTACK ON PERSONAL AND OFFICIAL ACTS OF JUDGE—MORAL TURPITUDE—VIOLATION OF OATH.—The publication and distribution through the mails of a circular by an attorney charging a judge of the superior court with having personally secured the transfer of a certain case from a certain department to his department, declaring that "It is also his custom to talk with prospective jury men and women, practically to exact from them promises to do as he says. It is also common practice for

---

1. Criticism of decision of court as ground for disbarment, notes, 15 Ann. Cas. 205; Ann. Cas. 1918A, 283.

him to pry into the secrets of the jury-room and find out how each juror voted. He is said to keep a list from which he can determine how every juryman voted, who ever sat in his department," and, in reference to his refusal to set aside a verdict in favor of a defendant railway company and grant a new trial, asking the "Query: Would he have set it aside if the judgment had been for the plaintiffs. The answer is, that he has never failed to set aside a judgment against a railroad; if the slightest flaw could be found in any stage of the proceedings," if not justified by the facts, constitute an act of moral turpitude and a violation of the attorney's oath as provided by section 282 of the Code of Civil Procedure, "To maintain the respect due to the courts of justice and judicial officers."

[2] ID.—DISBARMENT — PRIMA FACIE CASE — REBUTTAL — BURDEN OF PROOF.—In a proceeding for disbarment of an attorney at law for the publication and distribution through the mails of a circular containing an attack on the official and personal acts and conduct of a judge of the superior court, in violation of his oath as an attorney and involving moral turpitude, when the charges made by the attorney and contained in said circular had been placed before the trial court a *prima facie* case against the accused was established; and it was then incumbent upon the accused, if he would successfully defend himself against the accusations, to have shown the existence of privilege, or to have defended upon the ground that the statements made were true.

[3] ID.—MISUSE OF JUDICIAL OFFICE — CHARGES OF — LIBEL—SUSPENSION—DISBARMENT.—Charges made by an attorney amounting to misuse of judicial office can only be justified by proof of their truth; if they are untrue their publication constitutes libel, and for an attorney to libel a judge concerning his official acts is ground for suspension or disbarment.

[4] ID.—TRUTH OF CHARGES—BURDEN OF PROOF—PRESUMPTIONS.—In such proceeding, the burden was upon the attorney to show the truthfulness of his published statements, and under the circumstances evidence in the nature of a presumption of falsity arose which the attorney was called upon to meet; he was not clothed with any presumption as to the verity of his printed accusations, or of his own justification in broadcasting the alleged defamatory assaults upon the official or personal character of the magistrate.

[5] ID. — MALICE — REFUSAL OF ACCUSED TO TESTIFY. — In such proceeding, in addition to the presumption that the communication containing charges on their face libelous was maliciously and willfully published, the fact that the attorney refused to testify was evidence entitled to weight as showing the existence of malice and the absence of good faith.

64 Cal. App.—12

[6] Id.—Demurrer to Accusation—Proper Overruling of.—In such proceeding, a demurrer interposed by the attorney to the accusation upon the grounds that the publication of the circular was within his constitutional rights, that it was privileged, and that he was performing his duty as a citizen and as a lawyer, was properly overruled.

APPEAL form a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. O. Graves, *in pro. per.,* Kimball Fletcher, Dudley Robinson, James Westervelt and Henry E. Carter for Appellant.

Frank C. Collier and Edwin A. Meserve for Respondents.

CRAIG, J.—Appellant was charged in the superior court by the Los Angeles Bar Association with violations of subdivisions 2 and 6 of section 282, and subdivision 5 of section 287, of the Code of Civil Procedure, which provide as follows:

"282. Duties: It is the duty of an attorney and counselor: . . . 2. To maintain the respect due to the courts of justice and judicial officers; . . .

"6. To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged."

"287. An attorney and counselor my be removed or suspended by the supreme court, or any department thereof, or by any district court of appeal, or by any superior court of the state, for either of the following causes, arising after his admission to practice: . . .

"5. For the commission of any act involving moral turpitude, dishonesty or corruption, whether the same be committed in the course of his relations as an attorney or counselor at law, or otherwise, and whether the same shall constitute a felony or misdemeanor or not; and in the event that such act shall constitute a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a

condition precedent to disbarment or suspension from practice therefor.''

The specific grounds of these charges were that appellant caused to be printed and distributed through the mails among citizens of Los Angeles County circulars attacking the official and personal acts and conduct of Charles Monroe, a judge of the superior court of said county, certain portions of which circulars were selected and quoted in the accusation. The case was predicated principally upon the quoted excerpts, and those only are here reproduced, to the exclusion of remaining portions of a similar import, all of which constituted a somewhat lengthy article:

## "RECALL JUDGE CHARLES MONROE AND SAVE THE JURY SYSTEM.

'' . . . In case B–84060, Margaret Clark, a check clerk, at the Alexandria Hotel, sued the hotel company to recover tips which she had been given by patrons and had been forced by the hotel company to turn over to its treasurer. *Judge Monroe personally secured the transfer of this case from Department II, where it was set for trial, to his department;* on hearing the testimony he expressed the utmost disgust with the greed of the hotel company in exacting its tribute in tips from patrons and employees, but refused to allow the jury to pass on the question and ordered judgment in favor of the company. The young lady was not financially able to appeal.

'' . . . *It is also his custom to talk with prospective jurymen and women, practically to exact from them promises to do as he says. It is also common practice for him to pry into the secrets of the jury room and find out how each juror voted. He is said to keep a list from which he can determine how every juryman voted, who ever sat in his department.*

"In *Metcalfe* vs. *Pacific Electric Railway,* No. B–87332, Judge Monroe refused to set aside a verdict in favor of the defendant and grant a new trial, which judgment had been entered by mistake on a verdict to which only eight jurors agreed. See affidavits in the office of the Clerk of the Superior Court.

"*Query: Would he have set it aside if the judgment had been for the plaintiffs. The answer is, that he has never*

*failed to set aside a judgment against a railroad; if the slightest flaw could be found in any stage of the proceedings."*

The parties stipulated that said Charles Monroe at the times mentioned in the circulars, and at the time of the trial, was a judge of the superior court of the state of California, in and for the county of Los Angeles; and that M. O. Graves, at all of said times was a member of the bar, duly admitted and licensed to practice in all courts of the state.

Respondents alleged that the statements italicized herein were and each of them was false and untrue, and known by appellant to be untrue when said communication was published, and that the publication of them was libelous and dishonest, and in violation of those provisions of the code which require attorneys and counselors to maintain the respect due to courts of justice and judicial officers, and to abstain from all offensive personalities; and also that it constituted dishonesty and moral turpitude in the course of appellant's relations as an attorney or counselor at law, or otherwise.

Appellant asserts in his brief that he entertained the highest motives in anything which he may have said about the judge or his official conduct, asserting that as a citizen and attorney he harbored the noblest ideals, and cherished due respect for all tribunals before which he was privileged to appear; but that faithfully and honestly relying upon an abiding consciousness that justice was being besmirched by the practices which he denounced, he deemed it a sacred right and solemn duty to warn the public, and correct the asserted evil. He contends that his incentive entitled the questioned publication to privilege, and that any curtailment of his right of free speech in this regard infringed prerogatives guaranteed by the constitutions of both state and nation. He quotes eminent authorities in support of the right and duty of electors to comment upon and criticise the acts and conduct of candidates for public office.

At the trial appellant was called to the stand by his accusers. His counsel objected that the usual rights, immunities, and presumptions which abide with a defendant in criminal proceedings dwelt with him throughout the trial, and when overruled in this he refused to answer questions on the ground that his evidence might tend to incriminate him, declaring that the published circulars might be stretched

into criminal libel. He introduced no evidence as to the truth of any assertion embodied in his circular, or to refute any charge made against him in the accusation. Evidence was offered tending to show that appellant composed and wrote the alleged documents, and several members of the bar and judges testified to having received them from the post-office.

The acts charged against Judge Monroe would, if true, clearly constitute misuse of his judicial office and misconduct in office. If these charges were false the conclusion is equally impossible of escape that to have made them was an act of injustice and dishonesty. It is unfair, unethical, and immoral to falsely assail the character or official conduct of any officer. [1] Such an assault as that contained in the attack here made upon Judge Monroe, if not justified by the facts, was therefore an act of moral turpitude. (Bouvier's Law Dictionary, p. 2247.) It was also a violation of the attorney's oath as provided by section 282 of the Code of Civil Procedure, "To maintain the respect due to the courts of justice and judicial officers." [2] When the facts heretofore recounted had been placed before the trial court a *prima facie* case against the accused was established. It was then incumbent upon him if he would successfully defend himself against the accusations to have shown the existence of privilege, or to have defended upon the ground that the statements made were true. He did neither. There is nothing contained in the record to show that any election was imminent, or that the magistrate attacked had invited discussion or criticism as to his qualifications for any office, through having announced an aspiration to be elected thereto, or otherwise.

It is unnecessary here to attempt the establishment of limitations within which one may be confined in casting aspersions upon an incumbent of the judiciary during a heated campaign for re-election. Judge Monroe was not running for office, and no such occasion was presented. However, there are such limitations, and these questions have been settled by the supreme courts of this and most of the other states. In the *Matter of Humphrey*, 174 Cal. 290 [163 Pac. 60], it is declared that even though the subject of attack was at the time a candidate for re-election to judicial office, an attorney at law was not privileged to falsely accuse the magis-

trate of acts amounting to misuse of his office. It must be remembered and recognized that the language alleged to have been used by appellant contained charges of specific conduct which, if warranted by the facts, would amount to an abuse of official authority. We have in these accusations not a criticism in the way of fair comment, or of expression of opinion, but definite charges amounting to misuse of office. [3] Such charges can only be justified by proof of their truth; if they were untrue their publication constituted libel, and for an attorney to libel a judge concerning his official acts is certainly ground for suspension or disbarment. (*Dauphiny* v. *Buhne*, 153 Cal. 757 [126 Am. St. Rep. 136, 96 Pac. 880]; *Jarman* v. *Rea*, 137 Cal. 339 [70 Pac. 216].) In a disbarment proceeding, upon the question of proof, both as to the truth of the charges made and also the good faith of an attorney making them against a judge, the law is clearly and unequivocally stated by the United States circuit court of appeals in *Cobb* v. *United States*, 172 Fed. 641 [96 C. C. A. 477]. We quote from that decision: "The plaintiff in error admitted in his answer that he wrote the communication and sent the same to the publisher, but he denied that he did so maliciously or willfully, or that the article was willfully or maliciously or otherwise false or untrue, or that he had any intent to scandalize or traduce or disgrace the court. Upon the issue so raised, the plaintiff in error might, had he so chosen, have adduced testimony to sustain his denials, but upon the refusal of the court to refer the case to a committee of three members of the bar the plaintiff in error by his counsel announced in open court that he would not further appear in the case, or have anything further to do with the same. The burden was upon him to show that statements made in the communication which were scandalous upon their face were not maliciously or willfully published, or were not false, and he cannot complain that upon his refusal to sustain such burden of proof, or to adduce any testimony whatever, the court took the information to be true."

[4] In the instant case the burden was upon appellant to show the truthfulness of his published statements, and under the circumstances evidence in the nature of a presumption of falsity arose which appellant was called upon to

meet; he was not clothed with any presumption as to the verity of his printed accusations, or of his own justification in broadcasting the alleged defamatory assaults upon the official or personal character and conduct of a magistrate. [5] In addition to the presumption that the communication containing charges on their face libelous were maliciously and willfully published, the fact that the appellant refused to testify is evidence entitled to weight as showing the existence of malice and the absence of good faith. That his refusal to testify may be so viewed is expressly decided in *In re Wellcome,* 23 Mont. 450 [59 Pac. 445], which holding our supreme court quotes with approval in *In re Vaughan,* 189 Cal. 491 [24 A. L. R. 858, 209 Pac. 353].

[6] A demurrer was interposed to the accusation herein, and appellant contends that it should have been sustained on the grounds that the publication of the circular was within his constitutional rights, that it was privileged and that he was performing his duty as a citizen and as a lawyer. These questions have been passed upon in this opinion. The demurrer was properly overruled.

Exception was also taken to the adverse ruling of the trial court upon appellant's motion for stay of the order of suspension pending appellate proceedings, but in view of our holding no ruling upon that question is necessary.

The order and judgment appealed from are, therefore, affirmed.

Finlayson, P. J., and Works, J., concurred.