THE STATE BOARD OF LAW EXAMINERS,

*Complainant,*

v.

JOHN J. SPRIGGS,

*Respondent.*

(No. 2299; Jan. 23, 1945; 155 Pac. 285)

For the complainant there were briefs filed by L. J. *O'Marr,*, Attorney General, and *Ray E. Lee,* Assistant Attorney General of Wyoming, and oral argument by *Mr. Lee.*

For the respondent there were briefs filed by *Thos. A. Nicholas* of Casper, Wyoming, and *John J. Spriggs,* the respondent, of Lander, Wyoming, and oral argument by *Mr. Spriggs.*

## OPINION

METZ, District Judge, Presiding as Chief Justice.

This proceeding was filed in the District Court of Fremont County, Wyoming, on behalf of The State Board of Law Examiners asking for the disbarment of the Respondent. The proceedings are based upon Chapter 9, Wyoming Revised Statutes, 1931. The case was heard before a court composed of three of the District Judges of the state, and that court filed its recommendations in this court on June 8, 1944, recommending his suspension from practice for two years. The respondent has filed his objections and exceptions to these recommendations.

Briefly stated, the charge against the respondent is that he wrote and circulated a pamphlet attacking this court, and making false, contemptuous and scandalous charges against the court. The pamphlet was issued by the respondent when he was a candidate for nomination to the office of Justice of this court, and one of the members of the Supreme Court was his opponent.

The respondent's defense is based primarily upon five propositions:

1st: That the District Court and the Supreme Court are both without jurisdiction to hear this matter.

2nd: That he is entitled to a jury trial.

3rd: That he cannot be proceeded against except by action in libel.

4th: That he was a litigant and as such had a right to criticise the court.

5th: That the letter expresses his opinion, that it makes no difference whether he is right or wrong, he cannot be punished for expressing an opinion, as the Constitution guarantees him freedom of speech.

The respondent admits writing and circulating the objectionable article complained of herein. There is no dispute as to the material facts.

The respondent is 67 years old and has been a practicing attorney in this state since 1908. A number of years ago, he became attorney for a Mr. Tibbals, who was interested in mining claims in Fremont County, Wyoming, and a great deal of litigation resulted over these claims, and different questions involving the claims were litigated through the district court and into the supreme court four different times. See: Tibbals v. Keys, 40 Wyo. 524, 281 P 190; State ex rel Tibbals vs. District Court, 42 Wyo. 214, 292 P. 897; Tibballs and Spriggs vs. Graham et al, 50 Wyo. 277, 61 P. (2d) 279; Tibballs and Spriggs vs. Graham et al, 55 Wyo. 169, 97 P. (2d) 673. The respondent was largely successful in most of the litigation in the district and supreme courts. However, one or two decisions in the district court he took serious exception to, and one or two decisions in the supreme court he likewise seriously objected to and upon his last petition for rehearing being denied, this article was written.

The respondent acquired an interest in these mining claims from Tibbals and became a party plaintiff in the last two above mentioned cases.

In the summer of 1942, the respondent became a candidate for the nomination as justice of the supreme court against Justice Riner, whose term was expiring that year. In the summer of 1942, the article complained about herein was published by the respondent and mailed to members of the bar and others in the state. The respondent was defeated in the primary election.

The respondent objected to the three supreme court justices declining to sit upon his hearing, and objected

to the assumption and exercise of jurisdiction by a supreme court of three district court judges called in specially to hear the matter.

The Constitution of The State of Wyoming, Article V, Section 6, provides:

"CALLING DISTRICT JUDGES. In case a justice of the supreme court shall for any reason be unable to sit in any cause in said court, the presiding justice of said court shall call one of the district judges to sit as a member of said court on the hearing of said cause."

This constitutional provision became operative December 3, 1918, and has been recognized by the courts of this state ever since, and the different district judges of the state have been called in by the presiding justice numerous times to sit upon the supreme bench, pursuant to this constitutional provision. It has been possible in the past, however, for one of the supreme justices to sit with two of the district judges. This is the first time in the history of this court that it has become necessary to call in three district judges to fill the places of the three supreme court justices. The judiciary of this state consists of three supreme court justices and seven district court judges. Three of the district court judges heard the matter in the district court and are thus disqualified. One other district judge disqualified himself, and the three supreme court justices disqualified themselves. Thus we three district judges have the duty of sitting upon this case and determining the matter.

We believe that this constitutional provision contemplates the calling in of a district judge to take the place of each justice who shall for any reason be unable to sit. Thus if one, two or all three justices for any reason think they should not sit in a case, each place is filled by a district judge who is called in by the Chief Justice.

The constitutional provision was adopted to expedite the disposition of cases in this court, and also to provide a full panel to hear and determine litigation if any one or more justices were ill or for any reason felt he or they should not sit. The objection to the jurisdiction of this court as composed is overruled.

The respondent objects also to the jurisdiction of the trial court and to the refusal of a demand for a jury trial. Chapter 112 of the Session Laws of 1937, amending Wyo. R. S. 1931, Section 9-116, effective February 25, 1937, reads in part as follows:

"DISBARMENT PROCEEDINGS. The State Board of Law Examiners shall enforce the laws relating to attorneys-at-law, and shall have general charge of suspension and disbarment proceedings, or proceedings brought to suspend or revoke the license of any attorney or counselor-at-law to practice in this state. Such proceedings shall be brought and the hearings had in the district court in the Wyoming county where the accused resides * * * * *. The Judge of the District Court wherein the proceedings are brought shall call in to sit with him upon the hearing of any such proceedings two other district judges; provided, however, that the accused attorney shall be tried before said three-judge court and without a jury."

Section 9-114, Wyo. R. S. 1931, in part reads as follows:

"The Supreme and District Courts may revoke or suspend the license of any attorney or counselor at law to practice therein, for any of the following reasons: * * * 5. For the wilful violation of any of the duties of attorney or counselor."

The law pertaining to disbarment proceedings has been passed upon by this court in several cases in which it has been held that the proceedings in the district court are advisory to the supreme court, that the remedy prescribed for proceeding in the district court is not exclusive, and that the disbarment proceedings are

not exactly either criminal or civil in nature, but partake of the character of special proceedings, disciplinary and summary in form, necessarily incident to the inherent power of the courts to control properly their own officers. State Board vs. Brown, 53 Wyo. 42, 77 P (2d) 626. Thus it will be seen from the statutory provision that the trial court had jurisdiction and the respondent was not entitled to a jury trial. The constitutional provision in reference to libel and slander in which a jury determines the facts and the law is not applicable to this type of a proceeding.

We cannot subscribe to the law contended for by the respondent, that he can only be proceeded against in a libel suit, if at all. Nor that he is immune to all disciplinary proceedings for publishing this article, notwithstanding the Hart Case decided in Minnesota in 1908, upon which he largely relies would so protect him. In the Hart case the respondent was suspended from practice for mailing the objectionable letter to the Judge but not for having them published in the newspapers. See: In re Hart, 104 Minn. 88, 116 N. W. 212, 17 L.R.A. (N.S.) 585. We feel that the later cases decided by a great many courts as hereinafter cited uphold our views.

From an examination of the statutory provisions above cited we are of the opinion that this court has jurisdiction and authority to handle proceedings of this character, regardless of the decisions of any other state. Pennsylvania, Texas and some other states have special constitutional and statutory provisions requiring trial by jury, but those decisions are not applicable here. This question of disciplining an attorney is governed entirely by the laws of the state in which the attorney is admitted and practicing. It might be noted that our laws, prior to 1937, to-wit: (Wyo. R.S. 1931, 9-116) provided for a jury trial if requested and

a two or three judge court. But this law was changed in 1937 and the present statute heretofore quoted in this opinion, provides for a three judge court and no jury.

In his fourth defense, the respondent contends that because he was a party litigant his article is privileged, notwithstanding he is an attorney. We fail to find anywhere in the article any reference to himself as a litigant. In fact, the greater part of the letter calls the readers' attention to his legal education, long practice in the state and legal victories, etc. He was a candidate for the supreme court. No one would ever know he was a litigant from the letter. This defense must be overruled.

The letter written and signed by the respondent is too voluminous to quote in full. It consisted of four pages single-spaced typewriting in 24 paragraphs. We will set out in full the first, second, third, fourth, eighth and twenty-fourth paragraphs as being the most objectionable. The other paragraphs are not material to this hearing. They consist mostly of a discourse upon the failure of the citizens, bar association, et al, in not investigating the court, and some paragraphs about the filing of petitions with the legislature and Governor. The last two pages are devoted to listing his own qualifications as a candidate for judge and his legal victories, etc. The paragraphs to be quoted read as follows:

1. "As a candidate for Supreme Court Justice it is not necessary that I win. But it is necessary that I live up to what light I have and become such candidate as the only possible way to place before the people of the State the horrible unbelievable breakdown of Justice in the Supreme Court of Wyoming. This unpleasant task I fain would avoid. It is the harsh penalty exacted for service tendered the people of this state in preserving the purity of their courts, and exposing judicial

conduct which expells and drives Justice from its own sacred dwelling place in the Temple of Justice to habitations of offensive judicial bias, prejudice, failure and incompetency.

2. "It is inconceivable that the Supreme Court of Wyoming would render an official opinion which is so obviously in conflict with the universally established law of the entire nation as declared by the Supreme Court of the United States, the federal courts, the Supreme Court of the different States, the Constitution and express statutes of Wyoming, and above all in conflict with and nullifying three prior decisions of the Supreme Court of Wyoming on the same subject matter and issues, between the same parties and privies, and also in conflict with and nullifying a fourth final decision of the District Court between the same parties and privies, involving the same subject matter and issues, and further also in conflict with and nullifying the general law of Wyoming as declared in the prior decisions of the Supreme Court of Wyoming—that it amounts to a taking of property without due process of law, and a complete breakdown of, and denial of justice to citizens of the State.

3. "All the more astounding is it when in that official opinion the Court inserts matters which are accepted and published by the press of the State as the answer of the Court to campaign criticisms of the Court, directed against it while the case is pending before the Court. Such conduct has never been tolerated in any state or nation.

4. "It is inconceivable that when such matters are courteously called to the attention of the Court in a petition for re-hearing, with a request that the judges disqualify themselves under the constitution, and call in fair and impartial judges to render final judgment on the petition for re-hearing that the Court would not only ignore and defy such request but would denounce the request as a contempt of court.

8. "Blind reverence with which people worship their courts makes investigation thru the slow cumbersome machinery to cover up judicial incompetency and corruption, the last term including flagrant incompetency.

24. "I solicit an invitation from every local bar association in the state, and the University law school to bring before them the official judicial record of Judge Riner and the Wyoming Supreme Court and participating judges, that the bar, the law professors, and future lawyers may look, see, examine, analyse that record and formulate their own honest judgment of the horrible break-down of justice in the Supreme Court of Wyoming."

While we do not in any manner approve of or concur in the attack on Judge Riner still that is not the question before us. He is not being cited in here for attacking Judge Riner in this manner during the campaign. He is being proceeded against by the State Board on the theory that the article was a direct attack on the Supreme Court, and we will confine our consideration of the case entirely from that viewpoint.

The main point in our minds and the only material question involved in this proceeding is whether or not the respondent, as an attorney, is chargeable with conduct in the publication of this article that goes beyond the bounds of legitimate criticism of a judge or court or decision of the court. This respondent is an attorney-at-law, and as such is chargeable with a higher standard of behavior and conduct as pertaining to the courts, than laymen. He takes an oath to the effect "that he will faithfully and honestly, to the best of his ability, perform his duties as an attorney and counselor-at-law" (Sec. 9-113, Wyo. R.S. 1931) and one of the duties of an attorney is to maintain towards the courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. An attorney has a right to criticise the courts of this state and their decisions, so long as he confines his statements to the truth and does it in good faith with no design to wilfully and maliciously misrepresent the position of

the courts or to bring them into disrepute or lessen the respect due them.

The allegations in the first, eighth and twenty-fourth paragraphs certainly go far out of bounds and cannot be construed as a fair and just criticism of the court or a decision. This pamphlet must be read as a whole, as it would be read and construed by the average person not necessarily by someone learned in the law. The first paragraph states as follows:

(caps and underscoring by the court)

"As a candidate for Supreme Court Justice it is not necessary that I win. But it is necessary that I live up to what light I have and become such candidate as the only possible way to place before the people of the state THE HORRIBLE UNBELIEVABLE BREAKDOWN OF JUSTICE IN THE SUPREME COURT OF WYOMING. This unpleasant task I fain would avoid. It is the harsh penalty exacted for service tendered the people of this state IN PRESERVING THE PURITY OF THEIR COURTS AND EXPOSING JUDICIAL CONDUCT WHICH EXPELS AND DRIVES JUSTICE FROM ITS OWN SACRED DWELLING PLACE IN THE TEMPLE OF JUSTICE TO HABITATIONS OF OFFENSIVE JUDICIAL BIAS, PREJUDICE, FAILURE AND INCOMPETENCY.

It is not necessary, in our opinion, to pick out each of the objectionable phrases above used and define their meaning. The language is plain, unambiguous and with no reservations or exceptions. It means just what it says. He is chargeable with the ordinary meaning of the words used.

It is also apparent from his statements, in paragraph 1, that he became a candidate for the sole purpose of attacking the Supreme Court. His attack on Judge Riner was a mere side issue.

Heretofore he was cited by this court, the justices

presiding, for contempt, and upon his apology and a withdrawal of his contemptuous statements, the contempt matter was dismissed, all of which appears of record in this court. Paragraph 4 of the respondent's letter refers to this incident. Another matter indicating his attitude toward the Supreme Court in his statement in paragraph 3, showing he had been criticising the court, while it had under advisement and consideration the case mentioned in paragraph 2, wherein the respondent was the attorney for the losing party litigant. The respondent is not charged here with any of those criticisms, but the decisions are nearly unanimous that such conduct is contemptuous: State vs. Tugwell, 19 Wash. 238, 52 P. 1056.

Paragraph 8 states:

"Blind reverence with which people worship their Courts makes investigation thru the slow cumbersome machinery provided almost impossible. It thus becomes a shield to cover up judicial incompetency and corruption, the last term including flagrant incompetency."

The respondent contends in his argument that these were quotations from somebody else's speech. That is no justification for his using such language. When he puts it in his pamphlet and circulates it, he is responsible for the statement, and they are his words.

Paragraph 24, the concluding paragraph, reads as follows:

"I solicit an invitation from every local bar association in this state, and the university of Wyoming law school to bring before them the official judicial record of Judge Riner and the Wyoming Supreme Court and participating judges, that the bar, the law professors, and future lawyers may look, see, examine, analyse that record, and formulate their own honest judgment of the HORRIBLE BREAK-DOWN OF JUSTICE IN THE SUPREME COURT OF WYOMING."

"The horrible breakdown of justice in the Supreme Court of Wyoming" is an all inclusive allegation and can include bias, prejudices, incompetency, etc., as well as indicating that the citizens of the state cannot receive a fair trial and an honest decision in the Supreme Court.

From a reading of the paragraphs quoted, one can only arrive at the opinion and conclusion that the respondent was conducting a deliberate campaign of smearing, condemning and belittling the court before the citizens of the state, the Governor, legislature and law school, and soliciting invitations to speak at bar associations and other groups, for the sole purpose of criticising and discrediting the court, and all of this, because the court had decided a case against his client and denied a rehearing. Even if the court had erred in its decision, as contended by the respondent, that would not have justified the respondent in going to the extreme he did in this article.

We have learned years ago that a losing litigant almost always believes the court is wrong, and his attorney often has the same opinion. That is natural and to be expected, but this is the first time an attorney has published such a violent attack upon the integrity of this court. If every attorney who is dissatisfied with the decisions of the supreme court would go before the public with statements as are above quoted, it would not be long until the courts of this state would be in disrepute and the citizens believe they could not receive a fair, honest and impartial decision in this court.

Like most legal questions, cases can be found sustaining each side in this proceeding. However, we are satisfied that the law is pretty well established that an attorney is subject to disbarment or suspension from practice for publishing articles of the nature com-

plained of here. The Supreme Court of California, in 1917, in the case of In Re Humphreys, 174 Cal. 290, 136 P. 60, said in part:

"We are aware that there is a line of authorities which place no limit to the criticism members of the bar may make regarding the capacity, impartiality, or integrity of the courts, even though it extends to the deliberate publication by an attorney capable of correct reasoning of baseless insinuations against the intelligence and integrity of the highest courts. * * *

But, in our view, the better rule is that which requires of those who are permitted to enjoy the privilege of practicing law the strictest observance at all times of the principles of truth, honesty, and fairness, especially in their criticism of the courts, to the end that the public confidence in the due administration of justice be upheld, and the dignity and usefulness of the courts be maintained," and citing other authorities.

The Utah Supreme Court in 1912, had this to say on the subject In Re Hilton, 48 Utah, 172, 158 P. 691:

"And, as has been repeatedly held, liberty and freedom of speech under the Constitution do not mean the unrestrained right to do and say what one pleased at all times and under all circumstances (Warren v. U.S., 183 Fed. 721, 106 C.C.A. 156, 33 L.R.A. (N.S.) 800), and do not license scandal and defamation of courts (McDougall v. Sheridan, 23 Idaho 191, 128 P. 954; Burdett v. Commonwealth, 103 Va. 838, 48 S.E. 878, 68 L.R.A. 251, 106 Am.S. Rep 916) ; that it is the use and not the abuse of free speech that is protected, and that every one at all times is responsible for an abuse of the privilege (Diener v. Star-Chronicle Pub. Co. 230 Mo. 613, 132 S.W. 1143, 33 L.R.A. (N.S.) 216) ; and that an attorney, guilty of such abuse by slandering or scandalizing or defaming a court or judge, is subject to discipline and disbarment (Cobb v. U.S. 172 Fed. 641, 96 C.C.A. 477; In re Thatcher 80 Ohio St. 492, 89 N.E. 39; s. c., 83 Ohio St. 246, 93 N.E. 895, Ann. Cas. 1912A, 810; In re Breen, 30 Nev. 164, 93 P. 997; People v. Green, 7 Colo. 237, 3 P. 65, 49 Am. Rep 351)".

In 5 Am. Jur. 420, Sec. 266, the author states the rule thus:

"CRITICISM OF JUDICIAL ACTS.—There can be no question as to the right of a court to suspend or disbar an attorney for comment upon and criticism of the judicial acts of a court or its members, when couched in such language as to establish clearly the bad character of the offender and his unfitness to remain a member of the legal profession".

The following cases uphold the authority of the court to suspend or disbar an attorney for such conduct: State ex rel. Dabney vs. Breckenridge, 126Okla. 86, 258 P. 744, 53 A.L.R. 1239; State ex rel. Williams vs. Sullivan, (1912) quite similar to the present case, 35 Okla. 745, 131 P. 703, L.R.A. 1915D, 1218; In re. Hilton, 48 Utah 172, 158 P. 691 (1916); In re. Humphrey, 174 Cal. 290, 163 P. 60 (1917); In re Breen (Nev.) 93 Pac. 997, 17 L.R.A. N.S.) 572 (1908); In re. Thatcher, 80 Ohio St. 492, 89 N. E. 39 (1909); 5 Am Jur. P. 420, Sec. 266.

Members of the bar are officers of the court and as such are required under Chapter 97, Session Laws of Wyoming, 1939, to comply with the rules and regulations promulgated by the Supreme Court of the State of Wyoming. These rules have been established since 1941, and include the canons of professional ethics of the American Bar Association which govern the professional conduct of attorneys-at-law. Section 1, of the Canons of Professional Ethics, reads as follows:

"1. THE DUTY OF THE LAWYER TO THE COURTS. It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judi-

cial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected."

It is not necessary for us to defend the reputation of the supreme court of this state. The court's long and honorable record is a sufficient defense of and in itself. However, we feel, and we think the legal profession as a whole, feels that our supreme court ranks among the highest in the thoroughness of its work and fairness of its decisions, and the honesty and integrity of its members is recognized by every member of the 'Bar and the citizens of the state. The respondent as an attorney is granted special privileges which are intended for public good, and he knows the rules and regulations of the courts.

The lower court made the following findings and recommendations in part, to-wit:

"III.    That said letter contains false statements and innuendos and implications defamatory of and derogatory to the Supreme Court of the State of Wyoming and which were designed to bring and have the effect of bringing said Court into disrespect among the citizens of the State.

The said letter in effect and by implication falsely charges the Supreme Court of this State with corruption, bias, prejudice and incompetency."

"IV.    That the acts of the said John J. Spriggs in so preparing and circulating said letter constitute a willful violation by him of his duties as an attorney-at-law of the State of Wyoming and are a just and legal cause for the revocation or suspension of his license as an attorney-at-law of this State.

"And now upon the foregoing findings the Court recommends to the Honorable Supreme Court of the State of Wyoming, that the said John J. Spriggs, respondent herein, be suspended from the practice of law in the Courts of this State for the period of two years."

His charges of ignorance, prejudice, bias, gross incompetence and corruption against the Supreme Court is, in our minds, wilful, malicious and untruthful, and made with the intention of bringing the court into disrepute.

The findings and recommendations of the court below are approved, excepting the term for which the respondent should be suspended from practicing in this state, and that is modified to a period of six months, which we feel is ample punishment, and that he will not again be guilty of such conduct.

ILSLEY *and* THOMPSON, District Judges, concur.

Mr. Chief Justice Blume, Mr. Justice Riner and Mr. Justice Kimball having announced their disqualification to sit in this cause, Honorable P. W. Metz, Judge of the Fifth Judicial District, Harry P. Ilsley, Judge of the Sixth Judicial District, and Sam M. Thompson, Judge of the First Judicial District, were called in to sit in their stead.