[L.A. No. 31140. Oct. 18, 1979]

STANLEY MOSK, an Associate Justice of the Supreme Court, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COMMISSION ON JUDICIAL PERFORMANCE, Real Party in Interest.

476

COUNSEL

Mitchell, Silberberg & Knupp, Edward M. Medvene and Richard M. Mosk for Petitioner.

Ephraim Margolin, Richard J. Kohlman, Beauzay, Hammer, Ezgar, Bledsoe & Rucka, Victor H. Beauzay, Philip L. Hammer, Michael J. Ezgar, Robert T. Bledsoe, N. Michael Rucka, Stephen D. Sprenkle, Melvyn D. Silver, Emmett P. O'Boyle, Edward M. Suden, Louis H. Ginsberg, Alfred Lombardo, Paul E. Jacobs, Susan T. Levin, J. Andrew McKenna, Frederick L. Boyd, John A. Stonich and Ann E. Bailey as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Beardsley, Hufstedler & Kemble, Seth M. Hufstedler, John Sobieski, Burton J. Gindler, Peter O. Israel, Pierce O'Donnell and Evelyn Balderman for Real Party in Interest.

Gray, Cary, Ames & Frye, Josiah L. Neeper, Edward J. McIntyre, Jan S. Gonnerman, Lawrence W. Jordan, Jr., and Joanne M. Garvey as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**THE COURT.\***—Associate Supreme Court Justice Stanley Mosk filed a petition for a writ of mandate, or other appropriate relief, in the Los Angeles County Superior Court to quash a subpoena ordering him to appear as a witness at a public hearing before the Commission on Judicial Performance (hereinafter the Commission), which is investigating possible judicial misconduct by one or more justices of the Supreme Court.[1] Justice Mosk sought to quash the subpoena on the ground the public investigation, pursuant to rule 902.5 of the California Rules of Court, is unconstitutional in light of California Constitution article VI,

---

\*Before seven assigned judges from the California Court of Appeal: Associate Justice James A. Cobey, Second Appellant District, Division Three (Los Angeles), as Acting Chief Justice; Associate Justice Joseph A. Rattigan, First Appellate District, Division Four (San Francisco); Associate Justice James B. Scott, First Appellate District, Division Three (San Francisco); Associate Justice Hugh A. Evans, Third Appellate District (Sacramento); Associate Justice George Hopper, Fifth Appellate District (Fresno); Presiding Justice Clinton W. White, First Appellate District, Division Three (San Francisco); Associate Justice John J. Miller, First Appellate District, Division Two (San Francisco).

[1]The Commission undertook the investigation, on request of the Chief Justice, in response to widespread news media reports that one or more of the justices improperly delayed the filing of controversial decisions, particularly the decision in *People* v. *Tanner* (Cal. 1978) until after the November 1978 election at which the names of four Supreme Court justices were on the ballot for confirmation by the voters. Justice Mosk was not one of the four justices on the ballot for reconfirmation.

section 18, subdivision (f), which requires the Judicial Council to make rules which provide for confidentiality of proceedings before the Commission. The superior court denied Justice Mosk's petition. He then petitioned the Court of Appeal, Second Appellant District, for a writ of mandate to compel the superior court to vacate its order denying his petition and to enter a new order granting relief. The Court of Appeal granted Justice Mosk's petition and issued a peremptory writ which ordered the superior court to quash the Commission's subpoena of Justice Mosk. Before the Court of Appeal's decision became final, the Commission petitioned the California Supreme Court for a writ of mandate to compel the Court of Appeal to vacate the peremptory writ; in the alternative, the Commission requested that the Supreme Court transfer the proceeding to itself on its own motion. (*Commission on Judicial Performance* v. *Court of Appeal,* L.A. No. 31134.) All the Supreme Court justices, except Associate Justice Newman, disqualified themselves from acting on the Commission's petition. The Chief Justice assigned six Court of Appeal justices, who were selected by lot pursuant to an order by the Supreme Court, to act on the petition.[2] This court then ordered the first proceeding (*Mosk* v. *Superior Court,* L.A. No. 31140) transferred to itself on its own motion.[3] (See Cal. Const., art. VI, § 12; Cal. Rules of Court, rule 20.)

Justice Mosk raises two principal questions: (1) Does the Supreme Court, composed of all assigned judges pro tempore, have constitutional authority or jurisdiction to act in this matter? (2) If so, is rule 902.5 of the California Rules of Court unconstitutional in light of article VI, section 18, subdivision (f), of the California Constitution? As we shall explain, we conclude that this court has authority to decide the merits of this dispute, that rule 902.5 is unconstitutional because it violates the confidentiality requirement of article VI, section 18, subdivision (f), and that Justice Mosk consequently cannot be compelled to testify at a public hearing before the Commission.

I

▮ Justice Mosk argues that this court, composed of all assigned judges pro tempore, has no constitutional authority or jurisdiction to act in this case, and that the peremptory writ of mandate issued by the Court of Appeal, Second Appellate District, must therefore stand as the

---

[2]On motion by the Commission, this court subsequently found and declared that Justice Newman was disqualified from participating in this case. A seventh Court of Appeal justice was then selected by lot to replace Justice Newman.

[3]For this reason the second proceeding (*Commission on Judicial Performance* v. *Court of Appeal,* L.A. No. 31134) is dismissed.

decision of the court of last resort.

The California Constitution, article VI, section 2, provides: "The Supreme Court consists of the Chief Justice of California and 6 associate justices. The Chief Justice may convene the court at any time. Concurrence of 4 judges present at the argument is necessary for a judgment. [¶] An acting Chief Justice shall perform all functions of the Chief Justice when the Chief Justice is absent or unable to act. The Chief Justice or, if the Chief Justice fails to do so, the court shall select an associate justice as acting Chief Justice."

The Chief Justice has long had constitutional authority to assign any lower court judge, who is otherwise qualified, to the Supreme Court to sit in place of a disqualified Supreme Court justice. The 1926 constitutional amendment which created the Judicial Council (Cal. Const., art. VI, § 1a, now § 6) provided that the Chief Justice, as chairman of the Judicial Council, "shall seek to expedite judicial business and to equalize the work of the judges, and shall provide for the assignment of any judge to another court of a like or higher jurisdiction to assist a court or judge whose calendar is congested, to act for a judge who is disqualified or unable to act, or to sit and hold court where a vacancy in the office of judge has occurred." As amended in 1966 and 1974, this provision now reads: "The Chief Justice shall seek to expedite judicial business and to equalize the work of judges. The Chief Justice may provide for the assignment of any judge to another court but only with the judge's consent if the court is of lower jurisdiction. A retired judge who consents may be assigned to any court." (Cal. Const., art. VI, § 6, par. 5th.)[4]

Although the 1966 revision of article VI eliminated the language which empowered the Chief Justice to assign any judge to another court to act for a judge who is disqualified or unable to act, the 1966 revision was not intended to preclude the Chief Justice from assigning a duly qualified judge to another court to act for a disqualified judge. The 1966 revision was part of an overall policy of the Constitution Revision Commission to eliminate unnecessary language and to state the substance of existing sections more concisely and in modern terms. (Cf. *People v. Tijerina* (1969) 1 Cal.3d 41, 48 [81 Cal.Rptr. 264, 459 P.2d 680]; see also Cal Const. Revision Com., Proposed Revision (1966) p. 82.) The Constitution gives the Chief Justice broad authority to expe-

---

[4]Code of Civil Procedure section 170.8 also provides that the Chairman of the Judicial Council (Chief Justice) may assign a judge to hear an action or proceeding in a court where there is no qualified judge in that court to hear the action or proceeding.

dite the work of the courts (see *People* v. *Najera* (1979) 88 Cal.App.3d 930, 933-934 [152 Cal.Rptr. 124]), and implicit in that authority is the Chief Justice's power to assign judges to assist the Supreme Court when regular Supreme Court justices are disqualified. Such assignments have become commonplace.

Justice Mosk argues that once the Chief Justice disqualified herself from participating in this proceeding, she was also disqualified from assigning other judges to the Supreme Court to decide this matter, and that the order assigning Court of Appeal judges to this court is therefore void (citing *Noorthoek* v. *Superior Court* (1969) 269 Cal.App.2d 600, 604-606 [75 Cal.Rptr. 61], and discussion of authority of judge disqualified under Code Civ. Proc., § 170, to make certain orders in the action or proceeding). When the Chief Justice is disqualified, normally the Acting Chief Justice makes assignments to the Supreme Court to fill vacancies. However, the fact that the Chief Justice is disqualified from deciding the merits of a given case does not preclude her from exercising her administrative responsibilities in assigning judges to replace disqualified Supreme Court justices. (Cf. *Yelle* v. *Kramer* (1974) 83 Wn.2d 464 [520 P.2d 927]; *State Board of Law Examiners* v. *Spriggs* (1945) 61 Wyo. 70 [155 P.2d 285], cert. den., 325 U.S. 886 [89 L.Ed. 2001, 65 S.Ct. 1571].) Moreover, where, as here, all the Supreme Court justices were ultimately disqualified, the Chief Justice is empowered to make the assignment under the rule of necessity.[5]

There is no constitutional provision, statute, or court rule which prescribes the manner in which assigned judges are to be selected, except for article VI, section 18, subdivision (e), which is not applicable here.[6]

---

[5]Under the rule of necessity a disqualified administrative officer may nevertheless act if his failure to act would necessarily result in a failure of justice. (*Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 366 [139 P.2d 908]; see also *Scannell* v. *Wolff* (1948) 86 Cal.App.2d 489, 493 [195 Cal.Rptr. 536]; *Brenkwitz* v. *City of Santa Cruz* (1969) 272 Cal.App.2d 812, 818 [77 Cal.Rptr. 705].)

[6]Article VI, section 18, subdivision (e), of the California Constitution provides: "A recommendation of the Commission on Judicial Performance for the censure, removal or retirement of a judge of the Supreme Court shall be determined by a tribunal of 7 court of appeal judges selected by lot." Justice Mosk argues that the adoption of this provision in 1976 indicates that prior to 1976 a Supreme Court composed of assigned judges pro tempore court not have been established to consider the censure, removal or retirement of a Supreme Court justice. Section 18, subdivision (e), however, was adopted to (1) expressly provide that the matter would be decided by judges other than fellow Supreme Court justices or superior court judges, and (2) to prevent the Chief Justice from selecting the judges to be assigned to hear the matter. Nothing in the adoption of section 18, subdivision (e), suggests that it was adopted because a Supreme Court composed of all assigned judges would not have constitutional authority to hear the matter.

■ The manner, method, or criteria for selection of duly qualified assigned judges is within the inherent power of the Supreme Court and within the discretion of the Chief Justice in the exercise of her constitutional authority to make the assignments.[7] Selection of assigned judges by lot is a proper method which the Chief Justice may use to avoid charges of bias, prejudice, or favoritism in making the selection. (Cf. *Yelle v. Kramer, supra,* 83 Wn.2d 464 [520 P.2d 927].)

■ A duly assigned judge pro tempore generally has the same power and authority (*pro hav vice*) as a regular judge of the court to which he or she is assigned. (See *Fay v. District Court of Appeal* (1927) 200 Cal. 522, 540 [254 P. 896]; see also *Metropolitan Water District v. Adams* (1942) 19 Cal.2d 463 [122 P.2d 257]; *Amos v. Superior Court* (1960) 182 Cal.App.2d 343, 349-350 [6 Cal.Rptr. 252]; see generally, 48 C.J.S., Judges, § 99, pp. 1111-1112; 46 Am.Jur.2d Judges, § 254, pp. 271-272.) Logically, if one judge assigned to the Supreme Court to replace a disqualified Supreme Court justice has the power and authority of a Supreme Court justice in the assigned case, including the power to cast the decisive vote (see e.g. *Metropolitan Water District v. Adams, supra,* 19 Cal.2d 463; *People v. Cheatham* (1979) 23 Cal.3d 829 [153 Cal.Rptr. 585, 591 P.2d 1237], majority opinion by three associate Supreme Court justices and three assigned judges; *California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) *ante* p. 200 [157 Cal. Rptr. 840, 599 P.2d 31], majority opinion by two associate Supreme Court justices and four assigned judges), it follows that four or more duly assigned judges have the authority to render a valid decision or judgment in a case before the Supreme Court.[8]

Nevertheless, relying primarily on dictum in *Fay v. District Court of Appeal, supra,* 200 Cal. 522, Justice Mosk argues that there is no constitutional authority for a Supreme Court composed only of all assigned judges pro tempore, and that such a court has no authority or jurisdiction to act. (See also *Landon v. District Court of Appeal* (1927) 200 Cal. 798 [254 P. 907].) In *Fay,* the Chief Justice, as chairman of the

[7]Code of Civil Procedure section 187 provides: 'When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necesssary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any sutitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

[8]Article VI, section 2, of the California Constitution provides, in part: "Concurrence of 4 judges present at the argument is necessary for a judgment." Justice Mosk argues that since the word "judge" includes "justice" this provision requires a decision by four Supreme Court justices. We conclude, however, that the word "judges," as used in article VI, section 2, includes assigned judges pro tempore.

Judicial Council, had assigned three Los Angeles Superior Court judges to sit and hold court as justices of the District Court of Appeal, Second Appellate District, Division Two. The order was made pursuant to the 1926 constitutional amendment of article VI which created the Judicial Council and authorized the Chief Justice, as chairman, to assign "any judge to another court of a like or higher jurisdiction to assist a court or judge whose calendar is congested,..." Division Two of the Court of Appeal, Second Appellate District, then ordered the case of *People* v. *Fay* on calendar in that division for hearing and decision by the three assigned judges pro tempore. Fay objected and petitioned the Supreme Court for a writ of review of these orders and for a writ of prohibition to prevent the assigned judges from deciding his case. After a review of the history of article VI and the purpose of the 1926 amendment, the Supreme Court held that while it was proper for the Chief Justice to assign the superior court judges to the Court of Appeal to assist Division Two with its congested calender, it was improper for the Court of Appeal to assign Fay's case to a panel of three assigned judges pro tempore where the regular Court of Appeal justices in Division Two were neither disqualified nor unable to participate in the decision. Before reaching this conclusion the court reviewed the history of the 1904 and 1918 amendments of article VI as it pertained to the assignment of judges pro tempore to the Supreme Court and Court of Appeal (see *Fay* v. *District Court of Appeal, supra,* 200 Cal. at pp. 532-536). In the course of that review the court said, at pages 535-536: "...and it is interesting to note that the plan of calling in *pro tempore* justices as adopted in 1904 was evidently intended to be one of the ways then devised to relieve 'congestions'; since the same amendment which created the District Courts of Appeal for that then much needed relief also provided for the maintenance of the man power of both courts by the selection of justices *pro tempore* in each as the emergency required. It has, however, never been considered, nor is it now contended, that the power then reposed in the justices of the Supreme Court or of the District Courts of Appeal to make selections of justices or judges to act in the stated emergencies as justices *pro tempore,* however flexible its operation as disclosed in the Reeves case, could be so indefinitely expanded as to permit either of these tribunals to so far replace its constituent membership as to create or constitute a Supreme Court or a District Court of Appeal so far composed of justices *pro tempore* as to exercise the judicial functions of the regularly constituted tribunal. It has never, for example, been considered, nor is it now contended, that under the terms of the amendments of 1904 or 1918 of the constitution relating to *pro tempore* justices that the members of the Supreme Court

or District Courts of Appeal were thereby invested with the power to substitute for themselves, acting as a group in the performance of the judicial function, another body of men composed of justices *pro tempore* and as such empowered to exercise the functions of a Supreme Court or District Court of Appeal. In other words, it was never intended to provide for the creation of a *court pro tempore*. To so interpret these provisions in said amendments, evidently intended to afford temporary and emergency relief, would be to encourage the violation of a very vital principle of popular government which is none other than that of the right of the people of a commonwealth to have their essential rights, liberties, and interests in respect to person and property heard and determined by courts of last resort, the constituent membership of which is composed of public servants of their own selection. That the people might transfer the direct exercise of this selection to those whom they may have chosen to administer the functions of our representative scheme of government is undoubted, but the text of such transfer, whether embodied in a constitution or a statute, should be plain and unambiguous." Justice Mosk relies on these statements in *Fay* to support his argument that a Supreme Court composed of a majority or all assigned judges pro tempore has no authority to act. The statements were made, however, with reference to the 1904 and 1918 constitutional amendments, which have since been repealed, and they must be read in light of the issue whether judges from lower courts could be assigned to assist a court with its congested calendar. As we read *Fay,* it does not suggest, and certainly does not hold, that the Supreme Court, composed of a majority or all assigned judges pro tempore, has no authority to act where, as here, all the regular Supreme Court justices are disqualified.

In *Metropolitan Water District v. Adams, supra,* 19 Cal.2d 463, the court said that a judge assigned to the Supreme Court does not have authority to act in place of a Supreme Court justice who is qualified and able to participate in the given action or proceeding. The court also recognized, however, that if a full complement of the qualified members of the Supreme Court is not available, then the matter may be decided by "such justice or justices as may be duly assigned to the court, provided that in no event shall there be more than seven justices acting on a particular matter." (*Id.,* at p. 469.) Implicit in this language is a determination that severn justices pro tempore have authority to decide a matter before the Supreme Court if the Supreme Court justices are disqualified.

In other states, Supreme Courts composed entirely of assigned judges pro tempore have decided cases where all the regular Supreme Court

justices were disqualified. For example, in *Yelle v. Kramer, supra,* 83 Wn.2d 464 [520 P.2d 927], all nine justices of the Washington Supreme Court disqualified themselves from participating in a mandamus proceeding which challenged an initiative measure prescribing salaries of certain elected state officials. A provision in the Washington Constitution states: "When necessary for the prompt and orderly administration of justice a majority of the Supreme Court is empowered to authorize judges or retired judges of courts of record of this state, to perform, temporarily, judicial duties in the Supreme Court...." (520 P.2d at p. 928.) Pursuant to this provision, all nine justices of the supreme court assigned an order appointing nine retired justices pro tempore, who were selected by lot, to decide the case.

In *State Board of Law Examiners v. Spriggs, supra,* 61 Wyo. 70 [155 P.2d 285, 287], cert. den., 325 U.S. 886, all the justices (three) of the Wyoming Supreme Court disqualified themselves from participating in the case. Pursuant to a provision in the Wyoming Constitution, the chief justice assigned three district court judges to sit as members of the supreme court to decide the matter. Spriggs objected on the ground that the supreme court, consisting of three judges pro tempore, did not have jurisdiction of the matter. In overruling Spriggs' objection, the court said, in substance, that the constitutional provision empowered the chief justice to assign as many district court judges to the supreme court as necessary to replace supreme court justices who were disqualified or unable to act, that the constitutional provision was adopted to expedite the disposition of cases in the supreme court and to provide a full panel to hear and determine litigation before it.

Similarly, in *State* ex rel. *Langer v. Kositzky* (1918) 38 N.D. 616 [166 N.W. 534], four of the five justices of the North Dakota Supreme Court disqualified themselves from ruling on a petition for a writ of mandate to compel the state auditor to provide additional compensation for members of that court. Four district court judges were assigned to the supreme court and they decided the matter.

Justice Mosk argues that where, as here, all the Supreme Court justices are disqualified, and the Supreme Court need not decide the case under the rule of necessity,[9] the decision by the Court of Appeal should

---

[9]Under the "rule of necessity" an appellate court consisting of judges who ordinarily would be disqualified may nevertheless decide the case if there is no other qualified judge or court with exclusive jurisdiction to decide the matter. (See *Evans v. Gore* (1920) 253 U.S. 245 [64 L.Ed. 887, 40 S.Ct. 550]; *Atkins v. United States* (Ct.Cl. 1977) 566 F.2d 1028, 1035-1040, cert. den., 434 U.S. 1009 [54 L.Ed.2d 751, 98 S.Ct. 718]; *Brinkley v. Hassig* (10th Cir. 1936) 83 F.2d 351, 357; see *Johnson v. State Bar*

stand as the decision of the court of last resort. Justice Mosk argues that this court should apply the so-called doctrine of "judicial void" as applied by the United States Supreme Court when it lacks a quorum of qualified justices to decide a given case. When the United States Supreme Court lacks a quorum of qualified justices, it can either place the case on a special docket until it has a quorum (see e.g., *United States* v. *Aluminum Co. of America,* and *North American Co. v. Securities & Exchange Commission* (1943) 320 U.S. 708-709 [88 L.Ed. 415, 64 S.Ct. 73]), or, if no quorum is possible, the court may dismiss the appeal and thereby affirm the circuit court of appeals judgment (see, e.g., *Chrysler Corporation* v. *United States,* and *Commercial Credit Co.* v. *United States* (1941) 314 U.S. 583 [86 L.Ed. 471, 62 S.Ct. 356]; see also Cunningham, *The Problem of the Supreme Court Quorum* (1943) 12 Geo.Wash.L.Rev. 175; Frank, *Disqualification of Judges* (1947) 56 Yale L.J. 605). Where the appeal is directly from a federal district court, the case is remanded to the court of appeals for decision.[10]

Where the United States Supreme Court lacks a quorum of qualified justices, it cannot decide the case because there is no procedure for the assignment of justices pro tempore to the Supreme Court to sit in place of disqualified justices. By contrast, in this state, as we have explained, the Chief Justice has constitutional authority to assign judges from lower courts to the Supreme Court to replace disqualified Supreme Court justices, and therefore it is not necessary for the California Supreme Court to adopt the United States Supreme Court's procedure of letting the lower court judgment stand.

---

(1935) 4 Cal.2d 744, 760 [52 P.2d 928], recognizing rule.) Justice Mosk argues that the Supreme Court need not invoke the rule of necessity since the Court of Appeal had jurisdiction and qualified judges to rule on his petition. We agree that the rule of necessity does not apply because there is an alternate method of selecting Supreme Court judges to decide the cause.

[10]As enacted in June 1948, 28 United States Code section 2109 provides: "If a case brought to the Supreme Court by direct appeal from a district court cannot be heard and determined because of the absence of a quorum of qualified justices, the Chief Justice of the United States may order it remitted to the court of appeals for the circuit including the district in which the case arose, to be heard and determined by that court either sitting in banc or specially constituted and composed of the three circuit judges senior in commission who are able to sit, as such order may direct. The decision of such court shall be final and conclusive. In the event of the disqualification or disability of one or more of such circuit judges, such court shall be filled as provided in chapter 15 of this title. [¶] In any other case brought to the Supreme Court for review, which cannot be heard and determined because of the absence of a quorum of qualified justices, if a majority of the qualified justices shall be of opinion that the case cannot be heard and determined at the next ensuing term, the court shall enter its order affirming the judgment of the court from which the case was brought for review with the same effect as upon affirmance by an equally divided court."

 Accordingly, we conclude that this court, composed of all duly assigned judges pro tempore, has authority to decide the merits of this proceeding.

## II

 Justice Mosk contends that rule 902.5 of the California Rules of Court, which authorizes a public hearing of this investigation by the Commission on Judicial Performance,[11] is unconstitutional in light of California Constitution article VI, section 18, subdivision (f), which requires the Judicial Council to make rules which provide for

---

[11]Since the Commission was first established by constitutional amendment in November 1960, all investigations by, and hearings before, the Commission were required to be confidential until the record was filed with the Supreme Court. Because of the unprecedented nature of the pending investigation of the Supreme Court justices, however, the Commission asked the Judicial Council, which has the rule-making authority, to modify the confidentiality requirement by amending the rules to allow the Commission's proceedings, "after completion of the preliminary investigation," to be "publicly conducted, disclosed or reported, in whole or in part, having due regard for the personal reputations and other legitimate interests of the judge or judges and their right to due process." The executive committee of the Judicial Council recommended rejection of the Commission's request, but the full council adopted rule 902.5 in January 1979. Rule 902.5 provides:

"In a proceeding in which the Commission finds that: (1) the subject matter is generally known to the public; (2) there is broad public interest; (3) confidence in the administration of justice is threatened due to lack of public information concerning the status and conduct of the proceeding; and (4) the public interest in maintaining confidence in the judicial office and the integrity of the administration of justice requires that some or all aspects of such proceeding should be publicly conducted or otherwise reported or disclosed to the public, the requirement of confidentiality may, to the extent determined by the Commission, be modified with respect to said proceeding; and, after completion of the investigation, a public hearing shall be held and shall be publicly conducted. The public hearing shall include the right of all segments of the news media to be present and report the proceedings.

"The Commission's determination shall be based solely on evidence taken at the hearing.

"Such determination to modify may be made at any time after the Commission undertakes to conduct an inquiry or investigation, or otherwise to institute such proceeding with respect to the subject matter, but only after affording notice and an opportunity to be heard on the issue to any judge whose conduct may be called into question in such proceeding. [As amended effective Jan. 29, 1979, adopted effective Jan. 16, 1979. This rule shall apply to any investigation or proceeding of the Commission on Judicial Performance relating to any possible improper conduct of any Justice of the Supreme Court of California arising out of (1) any irregularities or delays in handling the *Tanner* case; (2) any irregularities or delays in handling any other case or cases pending before the Supreme Court prior to the election of November 7, 1978, caused or instituted for the purpose of delaying the filing of the Court's decision in any such case until after the date of the election, and/or (3) any unauthorized disclosure of confidential information regarding any of the above pending cases prior to the public release of the decision. (Judicial Council resolution, January 16, 1979, as revised January 29, 1979.)]"

confidentiality of proceedings before the Commission.[12] The Commission, on the other hand, contends that article VI, section 18, subdivision (f), gives the Judicial Council discretionary rule-making authority to determine when, and under what circumstances, proceedings before the Commission shall be confidential, and that the adoption of rule 902.5 was within the discretionary rule-making authority of the Judicial Council. Both parties argue that their respective interpretations of section 18, subdivision (f), are (1) based on the plain and ordinary meaning of the words in that section; (2) supported by judicial and contemporaneous administrative construction; and (3) consistent with the history, intent, and objectives of that section. No reported California case has decided this issue.

The question of confidentiality of proceedings before the Commission on Judicial Performance must be considered in light of the Commission's history and the limited scope of its constitutional authority. It was, as previously noted, created by constitutional amendment in November 1960. (See Cal. Const., art. VI, § 8.) It has authority to investigate complaints of judicial misconduct, a judge's failure or inabil-

---

[12]Article VI, section 18, of the California Constitiution provides:

"(a) A judge is disqualified from acting as a judge, without loss of salary, while there is pending (1) an indictment or an information charging the judge in the United States with a crime punishable as a felony under California or federal law, or (2) a recommendation to the Supreme Court by the Commission on Judicial Performance for removal or retirement of the judge.

"(b) On recommendation of the Commission on Judicial Performance or on its own motion, the Supreme Court may suspend a judge from office without salary when in the United States the judge pleads guilty or no contest or is found guilty of a crime punishable as a felony under California or federal law or· of any other crime that involves moral turpitude under that law. If the conviction is reversed suspension terminates, and the judge shall be paid the salary for the judicial office held by the judge for the period of suspension. If the judge is suspended and the conviction becomes final the Supreme Court shall remove the judge from office.

"(c) On recommendation of the Commission on Judicial Performance the Supreme Court may (1) retire a judge for disability that seriously interferes with the performance of the judge's duties and is or is likely to become permanent, and (2) censure or remove a judge for action occurring not more than 6 years prior to the commencement of the judge's current term that constitutes wilful misconduct in office, persistent failure or inability to perform the judge's duties, habitual intemperance in the use of intoxicants or drugs, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The commission may privately admonish a judge found to have engaged in an improper action or a dereliction of duty, subject to review in the Supreme Court in the manner provided for review of causes decided by a court of appeal.

"(d) A judge retired by the Supreme Court shall be considered to have retired voluntarily. A judge removed by the Supreme Court ,is ineligible for judicial office and pending further order of the court is suspended from practicing law in this State.

"(e) A recommendation of the Commission on Judicial Performance for the censure, removal or retirement of a judge of the Supreme Court shall be determined by a tribu-

ity to perform the duties of a judge, and other conduct prejudicial to the administration of justice. (See *ante,* fn. 12.) ■ The Commission does not have the authority to investigate a "court." Its inquiry must be limited to misconduct or disability of an individual judge.[13] The Commission has authority to conduct hearings, make findings of fact (see Gov. Code, §§ 68750-68755; Cal. Rules of Court, rules 901-922), and recommend to the Supreme Court that a given judge be censured or removed or retired from the court. (Cal. Const., art. VI, § 18, subd. (c).) The Commission may privately admonish a judge for improper action or a dereliction of duty, but it has no power to censure, remove, retire or otherwise discipline a judge. It can only make certain recommendations to the Supreme Court, which then reviews the evidence and makes its own findings. (*Geiler v. Commission on Judicial Qualifications* (1973) 10 Cal.3d 270, 276 [110 Cal.Rptr. 201, 515 P.2d 1]; *Spruance v. Commission on Judicial Qualifications* (1975) 13 Cal.3d 778 [119 Cal.Rptr. 841, 523 P.2d 1209].) Although the Commission's findings are given great weight by the Supreme Court, they are inconclusive except where the Commission, having made a preliminary investigation, concludes that there is insufficient evidence to charge a judge with judicial misconduct.

The confidentiality of investigations and hearings before the Commission was considered essential to the success of the Commission from the outset. As adopted by the people in November 1960, article VI, section 10b, paragraph three, expressly provided that *"[a]ll papers filed with and proceedings before the Commission on Judicial Qualifications or masters appointed by the Supreme Court, pursuant to this section, shall be confidential. . ."* until the Commission filed the record in the Supreme Court.[14] The ballot argument in favor of this measure stated:

nal of 7 court of appeal judges selected by lot.

"(f) The Judicial Council shall make rules implementing this section and providing for confidentiality of proceedings."

[13]According to certain resolutions adopted by the Judicial Council and the Commission, each body purportedly resolved to investigate the "Supreme Court." As Commission counsel has conceded, however, the Commission has no constitutional authority to investigate the "Supreme Court" or any other "court." Its investigation must be limited to misconduct or disability of a judge.

[14]In its entirety paragraph three of former section 10b, article VI, provides: "All paper filed with and proceedings before the Commission on Judicial Qualifications or masters appointed by the Supreme Court, pursuant to this section, shall be confidential, and the filing of papers with and the giving of testimony before the commission or the masters shall be privileged; but no other publication of such papers or proceedings shall be privileged in any action for defamation except that (a) the record filed by the commission in the Supreme Court continues privileged and upon such filing loses its confidential character and (b) a writing which was privileged prior to its filing with the commission or the masters does not lose such privilege by such filing. The Judicial

"To avoid the unfairness of publicizing complaints of merely disgruntled litigants, proceedings before the Commission will not be public, unless and until it recommends to the Supreme Court the removal or retirement of the judge."

■ The confidentiality of investigations and hearings by the Commission is based on sound public policy. Confidentiality encourages the filing of complaints and the willing participation of citizens and witnesses by providing protection against possible retaliation or recrimination. (*McCartney* v. *Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 521 [116 Cal.Rptr. 260, 526 P.2d 268]; *Landmark Communications, Inc.* v. *Virginia* (1978) 435 U.S. 829 [56 L.Ed.2d 1, 98 S.Ct. 1535, 1539].) Confidentiality protects judges from injury which might result from publication of unexamined and unwarranted complaints by disgruntled litigants or their attorneys (*Landmark Communications, Inc.* v. *Virginia, supra*), or by political adversaries. Confidentiality of investigations by the Commission preserves confidence in the judiciary as an institution by avoiding premature announcement of groundless claims of judicial misconduct or disability. (*Landmark Communications, Inc.* v. *Virginia, supra.*) Confidentiality of proceedings before the Commission is essential to protecting the judge's constitutional right to a private admonishment (see Cal. Const., art. VI, § 18, subd. (c), if the circumstances so warrant. When removal or retirement is justified by the charges, judges are more likely to resign or retire voluntarily without the necessity of a formal proceeding if the publicity that would accompany such a proceeding can thereby be avoided.[15] (*Landmark Communications, Inc.* v. *Virginia, supra,*

Council shall by rule provide for procedure under this section before the Commission on Judicial Qualifications, the masters, and the Supreme Court. A justice or judge who is a member of the commission or Supreme Court shall not participate in any proceedings involving his own removal or retirement."

[15]The Commission on Judicial Performance has furnished the following data:

| Year | Complaints Filed | Inquiries (some kind of investigation) | Judge Contacted | Preliminary Investigation (if tabulated) | Admonishments | Resignations or Retirements | Public Discipline |
|------|------|------|------|------|------|------|------|
| 1961 | 68 | 23 | (This breakdown not made before 1964) | | | 4 | |
| 1962 | 95 | 23 | | | | 6 | |
| 1963 | 114 | 40 | | | | 10 | No |
| 1964 | 67 | 32 | 18 | | | 6 | Censures |
| 1965 | 85 | 38 | 29 | | | 4 | or |
| 1966 | 75 | 33 | 29 | | | 9 | Removals |
| 1967 | 101 | 48 | 33 | | | 5 | |
| 1968 | 132 | 48 | 35 | | | 2 | |
| 1969 | 155 | 46 | 28 | | | 4 | |
| 1970 | 181 | 33 | 24 | | | 2 | 1 censure |

435 U.S. 829.)[16] Leading writers have recognized that confidentiality of investigations and hearings by the Commission is essential to its success. (See Frankel, *Judicial Conduct and Removal of Judges for Cause in California* (1962) 36 So.Cal.L.Rev. 72; Frankel, *Removal of Judges: California Tackles an Old Problem* (1963) 49 A.B.A. J. 166, 170; Traynor, *Rising Standards of Courts and Judges* (1965) 40 State Bar J. 677, 688; 1965 Rep. of the Com. on Judicial Qualifications to the Governor, p. 2.)

In November 1966, as part of an overall revision of the California Constitution, sections 10a and 10b of article VI were eliminated and replaced with the present section 18. (See *ante,* fn. 12.) The revision eliminated the language of paragraph three of section 10b, which required that all papers filed with and proceedings before the Commission or special masters "shall be confidential" until the record is filed in the Supreme Court. The language was replaced by section 18, subdivision (e), now subdivision (f), which provides: "The Judicial Council shall make rules implementing this section and providing for confidentiality of proceedings." The question is whether the people of the State of California, in adopting the 1966 amendment of article VI, intended to eliminate the constitutional mandate that all proceedings before the Commission shall be confidential, and to vest the Judicial Council with discretionary rule-making authority to provide for confidential (i.e., nonpublic) or public proceedings as circumstances might warrant, or whether the people intended no substantive change in the confidentiality requirement.

| Year | Complaints Filed | Inquiries (some kind of investigation) | Judge Contacted | Preliminary Investigation (if tabulated) | Admonishments | Resignations or Retirements | Public Discipline |
|------|------|------|------|------|------|------|------|
| 1971 | 217 | 54 | 42 | 9 | | 2 | 1 censure |
| 1972 | 213 | 64 | 49 | | | 2 | |
| 1973 | 197 | 40 | 32 | 11 | | 2 | 2 censures 1 removal |
| 1974 | 247 | 36 | 33 | | | 3 | 1 censure |
| 1975 | 239 | 48 | 43 | 11 | | 3 | 2 removals |
| 1976 | 251 | 63 | 46 | 14 | | 3 | |
| 1977 | 217 | 53 | 52 | 11 | 8 | 1 | 1 retirement (involuntary) |
| 1978 | 274 | 72 | 59 | 20 | 7 | 3 | 1 censure 1 retirement (involuntary) |

January 1979

[16]In *Landmark Communications, Inc. v. Virginia, supra,* the Supreme Court noted that 47 states, the District of Columbia and Puerto Rico have established by constitution, statute or court rule some type of judicial inquiry and disciplinary procedures, and that all these jurisdictions (with the apparent exception of Puerto Rico) provide for the confidentiality of judicial disciplinary proceedings, at least until a formal complaint is filed with the state Supreme Court or equivalent body.

■ Generally, a substantial change in the language of a statute or constitutional provision by an amendment indicates an intention to change its meaning. But a mere change in phraseology, incident to a revision of the Constitution or statute, does not result in a change of meaning unless the intent to make such a change clearly appears. (*Hammond* v. *McDonald* (1942) 49 Cal.App.2d 671, 681 [122 P.2d 332]; cf. *Tillie Lewis Foods, Inc.* v. *City of Pittsburg* (1975) 52 Cal.App.3d 983, 1003 [124 Cal.Rptr. 698]; *Forde* v. *Cory* (1977) 66 Cal.App.3d 434, 438 [135 Cal.Rptr. 903].) The Commission concedes that article VI, section 18, subdivision (f), mandates that the Judicial Council shall make rules which provide for confidentiality of proceedings.[17] The Commission, nevertheless, argues that when section 18, subdivision (f), is considered in light of the former language requiring confidentiality of *all* proceedings before the Commission, it should be construed to mean that not *all* proceedings before the Commission need to be confidential; and that the words "providing for confidentiality" vest the Judicial Council with discretion and broad authority to determine when, and under what circumstances, proceedings before the Commission shall be confidential. The Commission argues that this is the practical and common sense interpretation of this provision.

As Justice Mosk argues, however, the words "providing for confidentiality" must be given their ordinary and usual meaning. ■ The words "provide for" are generally used to mean "to take precautionary measures" or "to make a proviso" or "to supply or furnish" in view of a possible need. (See Webster's New Internat. Dict. (3d ed. 1965) p. 1827; see also Words and Phrases, "Provide For.") ■ Section 18, subdivision (f), requires the Judicial Council "to establish" rules for confidentiality of proceedings before the Commission. While the Judicial Council is delegated discretionary power to establish rules which provide for confidentiality, section 18, subdivision (f), does not, on its face, give the council discretionary power to make exceptions to the confidentiality requirement by authorizing public investigations and hearings.

The Commission disputes this interpretation on the basis that if arti-

---

[17]Article I, section 26, of the California Constitution provides: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." This rule of construction applies to all provisions of the Constitution and to all branches of the state government, including the judiciary. (*State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 460-461 [343 P.2d 8]; see also *Jenkins* v. *Knight* (1956) 46 Cal.2d 220, 224 [293 P.2d 6].) As applied to article VI, section 18, subdivision (f), the Constitution mandates that the Judicial Council make rules which provide for confidentiality of proceedings before the Commission.

cle VI, section 18, subdivision (f), merely means that the Judicial Council shall make rules requiring confidentiality in all proceedings, there would be no need for any rules on the subject. However, a close analysis of the confidentiality requirement indicates a number of areas where court rules may be helpful or necessary. For example, specific court rules may be helpful in resolving such problems pertaining to confidentiality of discovery procedures in judicial disciplinary proceedings (see, e.g., *People* ex rel. *the Ill. Jud. Inquiry Bd.* v. *Hartel* (1978) 72 Ill.2d 225 [380 N.E.2d 801]), and whether the judge under investigation may make public statements without violating the confidentiality requirement (see, e.g., *Matter of Buford* (Mo. 1979) 577 S.W.2d 809, 825). Other jurisdictions with provisions that all proceedings "shall be confidential" have adopted rules implementing that requirement. (See, e.g., Va. Const., art. VI, § 10; Va. Code, § 2.1-37.13.)

In the *McCartney* case, the judge under investigation by the Commission claimed a denial of due process in its refusal of his demand that certain hearings before special masters be opened to the public. (*McCartney* v. *Commission on Judicial Qualifications, supra,* 12 Cal.3d 512 at pp. 518, 520-521.) The Supreme Court rejected his contention on review, stating: "Equally unfounded is petitioner's complaint that he should have been accorded an open hearing. This state has adopted a constitutional policy that proceedings before the Commission shall be confidential (Cal. Const., art. VI, § 18, subd. (e), authorizing the Judicial Council to 'make rules...providing for confidentiality of proceedings.') While such a policy undoubtedly was adopted in part to protect the particular judge charged with misconduct and might, therefore, arguably be waived by him, we recognize that the provision for confidentiality also protects witnesses and citizen complainants from intimidation. Inasmuch as confidentiality is constitutionally authorized, is based on sound reason, and is imposed in proceedings which are neither criminal nor before a 'court of justice' we preceive no impropriety in the Commission's refusal to open the hearings before the special masters to the public." (12 Cal.3d at pp. 520-521 [citations omitted].)

The Commission argues that the *McCartney* court's reference to the cited constitutional source as "authorizing the Judicial Council to 'make rules...providing for confidentiality of proceedings'" supports the view that the source invests the Judicial Council with authority to provide for exceptions to the confidentiality requirement. The focus is on the word "authorizing." The operative portion of the sentence where the quoted words appear is the indisputable recital that "[t]his state has adopted a constitutional policy that proceedings before the Commission

shall be confidential." The words follow this statement in a parenthetical citation of the constitutional source of the policy mentioned. Read in context, they identify the source but do not interpret it. The single word "authorizing" cannot be isolated from the context to import something the court did not say in the operative portion of the sentence. The related words used later in the context ("...confidentiality is constitutionally authorized...") convey no broader meaning. The passages quoted from *McCartney* do not support the Commission's interpretation of article VI, section 18, subdivision (f).

The conflicting contentions of the parties point to a latent ambiguity in article VI, section 18, subdivision (f).[18] ■■■ Where a provision in the Constitution is ambiguous, a court must ordinarily adopt that interpretation which carries out the intent and objective of the drafters of the provision and the people by whose vote it was adopted. (See *Story v. Richardson* (1921) 186 Cal. 162, 165 [198 P. 1057, 18 A.L.R. 750]; *Bakkenson v. Superior Court* (1925) 197 Cal. 504, 510-511 [241 P. 874]; *Kaiser v. Hopkins* (1936) 6 Cal.2d 537, 539 [58 P.2d 1278]; *State Board of Education v. Levit, supra,* 52 Cal.2d 441, 462-463; *Flood v. Riggs* (1978) 80 Cal.App.3d 138, 152 [145 Cal.Rptr. 573].) To ascertain the intent and objective of an ambiguous constitutional provision, a court may consider official reports of the California Constitution Revision Commission (*District Election Committee v. O'Connor* (1978) 78 Cal.App.3d 261, 270 [144 Cal.Rptr. 442]), the record of the debates (see *State Board of Education v. Levit, supra,* 52 Cal.2d at p. 462; *Pitts v. Reagan* (1971) 14 Cal.App.3d 112, 118 [92 Cal.Rptr. 27]), legislative committee reports (see *Jolicoeur v. Mihaly* (1971) 5 Cal.3d 565, 573 [96 Cal.Rptr. 697, 488 P.2d 1]; *Miro v. Superior Court* (1970) 5 Cal.App.3d 87, 99 [84 Cal.Rptr. 874]; *Arellano v. Moreno* (1973) 33 Cal.App.3d 877, 884 [109 Cal.Rptr. 421]), contemporaneous exposition or interpretation of the provision (*Carter v. Commission on Qualifications of Judicial Appointments* (1939) 14 Cal.2d 179, 185 [93 P.2d 140]), and written arguments in voter pamphlets (*White v. Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222]).

We have taken judicial notice, pursuant to Evidence Code sections 459 and 452, subdivision (c), of all material of the California Constitu-

---

[18]A law review writer states: "[A] latent ambiguity is said to exist where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic evidence creates a *necessity* for interpretation or a choice among two or more *possible meanings.*" (See Note, *Constitutional Law: The Doctrine of Latent Ambiguities As Applied to the California Constitution* (1943) 31 Cal.L.Rev. 203, 205.)

tion Revision Commission (Revision Commission) relating to the 1966 revision of article VI. Those materials include minutes and drafts by the Revision Commission, the article VI committee, and the drafting committee which was composed of certain members of the article VI committee.[19] An examination of those materials demonstrates that the basic objectives of the Revision Commission were to delete provisions which were redundant, obsolete, or unnecessary for inclusion in the Constitution, such as procedural matters which could be prescribed or provided for by statute or court rule. (Cal. Const. Revision Com., Proposed Revision (1966) p. 82.) The Revision Commission contemplated few substantive changes in article VI.

The first draft of the proposed revision of article VI was completed in June 1964. It proposed no change in the confidentiality requirement as stated in then existing section 10b, paragraph three. Later drafts, identified as the first subcommittee draft, a second working draft, an amended second working draft, and a third working draft also left the confidentiality requirement unchanged.

---

[19]Minutes summarizing the discussions engaged in and the decisions reached by the commission and its committee on article VI at their respective meetings regarding provisions in the drafts mentioned, with specific references to the particular drafts considered at the meetings, are enumerated in the following table:*

| Draft | Commission Minutes | Committee on Article VI Minutes |
|---|---|---|
| First Draft (June 1, 1964) | | July 30, 1964 September 18, 1964 October 17, 1964 November 5-6, 1964 |
| First Subcommittee Draft (November 4, 1964) | November 7, 1964 December 11-12, 1964 | December 10, 1964 February 12, 1966 |
| First Working Draft (February 28, 1965) | March 6, 1965 April 2, 1965 | March 4, 1965 April 22, 1965 |
| Second Working Draft (April 26, 1965) | May 7, 1965 | May 6, 1965 |
| Amended Second Working Draft (May 10, 1965) | | July 9, 1965 |
| Third Working Draft (July 15, 1965) | July 29, 1965 | |
| Amended Third Working Draft (September 10, 1965) | | September 3, 1965 |
| Drafting Committee Draft (November 1, 1965) | November 18-19, 1965 | |
| Final Commission Draft (December 1, 1965) | January 6, 1965 | |

*Source: Report of the Revision Commission, page 36, prepared for the Joint Rules Committee of the California Legislature, by J. Gould, formerly with the Office of Legislative Counsel.

At a meeting in May 1965, the Revision Commission decided to refer the proposed draft of what is now section 18 to the article VI committee with instructions to delete procedural portions which could be handled by statute. The article VI committee considered the matter and concluded that such transfers from the Constitution to statutes would be undesirable, and that in the sensitive area of disciplining judges the procedural safeguards were sufficiently important to be given "constitutional status."

At a meeting in July 1965, the Revision Commission approved a motion to delete paragraph three of existing section 10b (see *ante,* fn. 14), and referred the proposed draft to the article VI committee with instructions to delete the procedural portions of the draft. At a meeting in September 1965, the article VI committee discussed the meaning of the word "procedural" and the need for keeping confidential all records pertaining to the censure of judges. The article VI committee then approved a proposed draft which included the following provision: "The procedure under this section shall be prescribed by rules of the Judicial Council. The Judicial Council shall also prescribe rules implementing this section and providing for the confidentiality of proceedings hereunder." A subsequent draft changed this provision to read: "The Judicial Council shall prescribe rules implementing this section and provide for confidentiality of proceedings under it." The final draft, which was approved by the Revision Commission, read: "The Judicial Council shall make rules implementing this section and providing for confidentiality of proceedings." The Revision Commission's only comment on this provision was that it "gives exclusive rule-making power to the Judicial Council. It requires the council to make rules implementing the section and providing for confidentiality of proceedings before the Commission on Judicial Performance." (Cal. Const. Revision Com., Proposed Revision (1966) p. 98.) The summary and arguments in the voters pamphlet submitted to the electorate in November 1966 did not mention or explain the scope of the Judicial Council's authority to make rules providing for confidentiality of proceedings before the Commission on Judicial Performance.

Thus a review of the Revision Commission's materials and minutes fails to show that either the commission or the article VI committee considered the question whether the Judicial Council should be given discretionary rule-making authority to modify, or make exceptions to, the existing policy of confidential proceedings before the Commission on Judicial Performance. The minutes of meetings of the Revision

Commission, and of the article VI committee, show that the constitutional language pertaining to the confidentiality requirement was changed as part of the Revision Commission's policy of deleting procedural matters from the Constitution without changing the substance. (Cf. *District Election Committee v. O'Connor, supra,* 78 Cal.App.3d 261, 270.) The Revision Commission concluded that the Constitution should expressly require the Judicial Council to make rules which provide for confidentiality of proceedings before the Commission on Judicial Performance. The Revision Commission did not contemplate that section 18, subdivision (e), now subdivision (f), would give the Judicial Council discretionary rule-making power to authorize public investigations and hearings by the Commission on Judicial Performance as circumstances might warrant.

Moreover, the Judicial Council itself did not immediately contemplate that article VI, section 18, subdivision (e), (now subd. (f)), gave it authority to modify the constitutional policy requiring confidentiality of proceedings before the Commission on Judicial Performance. (See Judicial Council of Cal., Annual Rep. (1967) p. 88.) Within four days after the electorate approved the proposed revision of article VI in November 1966, the Judicial Council adopted rule 902, which provided that all papers filed with and proceedings before the Commission, or before the masters appointed by the Supreme Court, shall be confidential until a record is filed by the Commission in the Supreme Court. This rule was adopted to continue in rule form, without change in substance, the confidentiality requirement as formerly stated in the Constitution. (*Op. cit., supra,* at p. 151.)

Effective July 1, 1971, the Judicial Council amended rule 902 by adding subdivision (b), which authorizes the Commission to release information regarding its proceedings under limited circumstances. Rule 902(b) was further amended in 1977 and 1978.[20] The Commission ar-

---

[20]Rule 902(b), California Rules of Court, provides: "The Commission may release information regarding its proceedings under the following circumstances:

"(1) If a judge is publicly charged with involvement in proceedings before the Commission resulting in substantial unfairness to him, the Commission may, at the request of the judge involved, issue a short statement of clarification and correction.

"(2) If a judge is publicly associated with having engaged in serious reprehensible conduct or having committed a major offense, and after a preliminary investigation or a formal hearing it is determined there is no basis for further proceedings or recommendation of discipline, the Commission may issue a short explanatory statement.

"(3) When a formal hearing has been ordered in a proceeding in which the subject matter is generally known to the public and in which there is broad public interest, and

gues that these amendments of rule 902 indicate that the Judicial Council construed article VI, section 18, subdivision (f), to mean that it had authority to modify the constitutional policy requiring confidentiality of proceedings before the Commission, and that the council's contemporaneous construction is persuasive in determining the scope of the council's rule-making authority. ■ The Commission relies on the established rule that the contemporaneous administrative construction of an enactment by those charged with its enforcement and interpretation is entitled to great weight unless erroneous or unauthorized. (*Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848].) However, the ultimate determination of the meaning of the provision rests with the court. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].)

■ We conclude that in light of the history and purpose of article VI, section 18, the limited scope of the Commission's authority to investigate judicial misconduct, the strong public policy in favor of confidential investigations by the Commission, and the absence of any indication that the people of California intended to change the constitutional requirement of confidentiality by revision of article VI in 1966, the Judicial Council has authority to adopt rules which provide for confidentiality but it does not have the power to authorize public investigations and hearings before the Commission. Rule 902.5 is inconsistent with article VI, section 18, subdivision (f), which mandates confidentiality. For this reason Justice Mosk cannot constitutionally be compelled to testify at a public hearing before the Commission in C.J.P. No. 3012.[21]

in which confidence in the administration of justice is threatened due to lack of information concerning the status of the proceeding and the requirements of due process, the Commission may issue one or more short announcements confirming the hearing, clarifying the procedural aspects, and defending the right of a judge to a fair hearing.

"(4) If a judge retires or resigns from judicial office following institution of formal proceedings, the Commission may, in the interest of justice or to maintain confidence in the administration of justice, release information concerning the investigation and proceedings to a public entity.

"(5) Upon completion of an investigation or proceeding, the Commission shall disclose to the person complaining against the judge that after an investigation of the charges the Commission (i) has found no basis for action against the judge, (ii) has taken an appropriate corrective action, the nature of which shall not be disclosed, or (iii) has filed a recommendation for the censure, removal, or retirement of the judge. The name of the judge shall not be used in any written communication to the complainant unless the record has been filed in the Supreme Court."

[21]Counsel has represented that Justice Mosk has testified at a private hearing before the Commission in this matter. The confidentiality requirement precludes the Commission from releasing Justice Mosk's confidential testimony to the public.

III

In an amici curiae brief in support of the Commission on Judicial Performance, the Union Tribune Publishing Company (a division of the Copley Press, Inc.), the California Newspaper Publishers Association, Inc., and the San Jose Mercury News argue that the pending investigation, which was open to the public before Justice Mosk challenged the constitutionality of rule 902.5 in court, should be completed at public hearings in order to maintain public confidence in the integrity of the Supreme Court and the judicial system. No such purpose warrants deviation from the constitutional requirement of confidentiality established by the people of this state. Amici curiae further argue that the hearings should be continued in public because the focus of the Commission's investigation is the conduct of the Supreme Court as an institution and not an investigation into the conduct of the justices. As we have previously stated, however, the Commission has no constitutional authority to investigate the "Supreme Court" or any "court." The scope of its authority is limited to investigations of misconduct or disability of a judge (see *ante,* fns. 12, 13), and those investigations must comply with the constitutional requirement of confidentiality.

 Amici curiae also argue that Justice Mosk should be precluded from asserting the constitutional requirement of confidentiality because he delayed the filing of his petition for a writ of mandate until after commencement of the public hearings he challenges. The record shows, however, that Justice Mosk delayed the filing of his petition at the request of the Commission, and that he had advised the Commission of his present position well in advance of the public hearings. The pertinent sequence of events was as follows.

Shortly after the election in November 1978, the Chief Justice asked the Commission to investigate news media reports that certain controversial decisions had been improperly delayed until after the election. The Chief Justice also asked the Commission to issue a public report of its investigation, pursuant to rule 902(b)(2). In December the Commission asked the Judicial Council to adopt a rule which would modify the rule requiring confidential proceedings before the Commission. In January the Judicial Council adopted rule 902.5. In a letter dated February 15, 1979, and addressed to the Commission chairman, Justice Mosk stated his opinion that the Judicial Council is not constitutionally empowered to authorize public hearings before the Commission, and that

the Commission has no authority to proceed with any inquiry except in confidence. The Commission, nevertheless, proceeded with a preliminary investigation and, in April, made the findings required by rule 902.5 and decided to proceed with a public hearing. In another letter dated May 9, 1979, and addressed to the Commission chairman, Justice Mosk again objected to a public hearing on the ground that it would violate article VI, section 18, subdivision (f).

On or about June 11, all seven justices of the Supreme Court (and other court personnel) were served with subpoenas to appear as witnesses at the public hearing scheduled to begin on June 18. On or about June 13, Justice Mosk informed Commission counsel that if he were required to testify in public he would challenge the constitutionality of the public hearing by filing a petition for a writ of mandate in the superior court. A copy of the petition was apparently delivered to Commission counsel on that date. Pursuant to an understanding with Commission counsel, Justice Mosk delayed filing the petition until the Commission decided if and when Justice Mosk would be ordered to testify. The Commission proceeded with the public hearing, which received extensive coverage in the news media. Five of the Supreme Court justices and a number of court personnel testified in public. Justice Mosk, the last Supreme Court justice on the list of witnesses, was scheduled to appear before the Commission on July 9. He filed his petition for a writ of mandate on July 6, and the superior court denied it on July 12. His petition to the Court of Appeal was granted on July 17. The public hearing before the Commission terminated on that date. Justices Mosk and Newman subsequently testified at a Commission hearing which was closed to the public. In these circumstances, there is no merit to the assertions by amici curiae that Justice Mosk delayed his challenge of the constitutionality of rule 902.5.

## IV

Appearing as amici curiae, the San Francisco Bar Association and the California Attorneys for Criminal Justice argue that if this court declares rule 902.5 unconstitutional, the court should also determine whether the Commission may publicly announce its findings and conclusions in this matter pursuant to rule 902(b). (See *ante,* fn. 20.) The narrow issue decided by this court is whether article VI, section 18, subdivision (f), of the Constitution precludes the Judicial Council from

adopting rules, such as rule 902.5, which authorize public investigations and hearings by the Commission. The constitutionality of rule 902(b) is not an issue before this court, and we decline to express our views on the constitutionality of all the provisions of that section. Because of the public importance of the question raised by amici curiae, we will nevertheless state that where a Commission investigation of alleged judicial misconduct is known to the public, as in the present case, the Commission may report the results or status of the investigation to the public without violating the constitutional requirement of "confidentiality of proceedings." Article VI, section 18, subdivision (f), prohibits public hearings and public reports of testimony and other evidence presented to the Commission. It does not preclude either the Commission or a judge under investigation from publicly announcing the results of an investigation already known to the public.

Let a peremptory writ of mandate issue directing the Los Angeles County Superior Court to vacate the order entered in the case of Mosk v. Commission on Judicial Performance, No. SOC 55720, on July 12, 1979, and to enter a new order quashing the Commission's subpoena of Justice Mosk in C.J.P. No. 3012.

On November 15, 1979, the opinion was modified to read as printed above.