OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 90-505 |
| of | : | |
| | : | OCTOBER 25, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE JACK O'CONNELL, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. When a school district uses supplemental grant funds for one or more of the enumerated programs of Education Code section 54761, is it statutorily required to maintain its previous level of unrestricted funding for the enumerated programs?

2. Does the Department of Education have the authority to require a school district to maintain its previous level of unrestricted funding for the enumerated programs of Education Code section 54761 as a condition of receiving supplemental grant funds?

CONCLUSIONS

1.     When a school district uses supplemental grant funds for one or more of the enumerated programs of Education Code section 54761, it is not statutorily required to maintain its previous level of unrestricted funding for the enumerated programs.

2. The Department of Education does not have the authority to require a school district to maintain its previous level of unrestricted funding for the enumerated programs of Education Code section 54761 as a condition of receiving supplemental grant funds.

ANALYSIS

The State of California gives funds to local school districts under a variety of statutory programs. The Legislature has placed specific restrictions on the use of some of these funds, while other state moneys may be used at the discretion of a district for any number of educational purposes. Of course, a school district also receives funding from other sources such as the federal government and local taxes.

1.                                                                                    90-505

The two questions presented for resolution concern the "supplemental grants program" of Education Code sections 54760-54761.[1]  These statutes restrict a district's use of supplemental grant funds to specifically enumerated programs.  The issue is whether a district that has previously used some of its unrestricted funds for the enumerated programs of section 54761 must maintain its level of unrestricted funding in order to receive the supplemental grant funds.

### 1.  Statutory Limitations

The first question to be addressed is whether sections 54760-54761 require a district to maintain whatever previous unrestricted funding levels it may have had for the programs specified in section 54761.  We conclude that a district is not so required by any statutory provision.

Section 54760 states the general purpose of the supplemental grants program.  It provides:

"It is the intent of the Legislature to provide equal educational opportunity for all children in California.  To achieve this end, the Legislature hereby establishes supplemental grants to be allocated to school districts that are receiving less than average funding from existing state programs.  It is the intent of the Legislature that supplemental grants be funded by appropriations in the Budget Act in each of the two fiscal years following the first fiscal year in which funds for these grants are appropriated."

Section 54761, subdivision (e) restricts the uses of supplemental grant funds as follows:

"All grant funding apportioned under this article to any school district shall be deposited by that district into a restricted account, and shall be expended from that account only for the purpose of funding one or more of the programs enumerated in clause (i) of subparagraph (B) of paragraph (1) of subdivision (a)."

The "programs enumerated in clause (i) of subparagraph (B) of paragraph (1) of subdivision (a)" cover 26 categorical education programs such as pupil dropout prevention, gifted and talented education, and agricultural vocational education.  In addition, section 54760.1 was recently enacted to allow the use of supplemental grant funds for "School-Based Management and Advanced Career Opportunities for Classroom Teachers Pilot Programs."

Sections 54760-54761 do not expressly prohibit or restrict the use of any school funds other than supplemental grant funds.  Ordinarily a school district may use its unrestricted funds for those educational activities that it chooses and may transfer unrestricted funds from one program to another under the following conditions of section 42600:

". . . . Transfers may be made from the designated fund balance or the unappropriated fund balance to any expenditure classification or between expenditure classifications at any time by written resolution of the board of education of any school district governed by a board of education, when filed with the county superintendent of schools and the county auditor, or by written

---

[1]  All references hereafter to the Education Code are by section number only.  Section 54761 is set forth in full in an appendix to this opinion.

resolution of the board of trustees of any school district not governed by a board of education, when approved by the county superintendent of schools and filed with the county auditor. . . ."

By enacting sections 54760-54761, has the Legislature impliedly prohibited transfers as authorized by section 42600 for those unrestricted funds previously used by a district for the enumerated programs of section 54761, subdivision (a)(1)(B)(i)?

It may be argued that the Legislature intended for supplemental grant funds to be used in addition to the level of unrestricted funding already committed to the uses specified in sections 54760-54761. "Supplemental" is commonly defined as "serving to supplement," with "supplement" meaning "something that supplies a want or makes an addition." (Webster's New Internat. Dict. (3d ed. 1966) p. 2297.) A "supplemental" grant does not replace or act as a substitute for other funding. If it were merely to take the place of existing funds for the specified programs, these programs would not have "added" funding as "intended" by the Legislature.

We reject this argument, however, based upon various principles of statutory interpretation. The "primary aim in construing any law is to determine the legislative intent." (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501.) "In determining such intent, a court must look first to the words of the statutes themselves, giving to the language its usual, ordinary import." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.) "`If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.'" (*Schmidt* v. *Superior Court* (1987) 43 Cal.3d 1060, 1066.)

The basic goal of sections 54760-54761 is "to provide equal educational opportunity for all children in California." (§ 54760.) This goal is met whether the unrestricted funds of a district are used for categorical programs or other educational activities. The transfer of unrestricted funds out of a categorical program enumerated in section 54761 does not cause such funds to be "lost." They will still be available and used for educational purposes as determined by a district.

More specifically, the supplemental grant funds are "allocated to school districts that are receiving less than average funding from existing state programs." (§ 54760.) The statute does not say that the "existing state programs" are only the categorical programs enumerated in section 54761. Indeed, when the criteria for eligibility are examined, we find that unrestricted funds are part of the calculations (§ 54761, subd. (a)(1)(A)) in determining whether a district is "receiving less than average funding."

Accordingly a "supplemental" grant allocated to a district under the terms of section 54761 may be viewed as an addition to all "existing state programs," both unrestricted general aid and restricted categorical aid. Supplemental grant funds do not "replace" restricted or unrestricted state moneys; rather, they provide a "supplement" to a combination of the two.

We have found nothing in the legislative history of sections 54760-54761 that would suggest the implied repeal of section 42600 with respect to a district's unrestricted funds used for categorical programs. There is no indication that the Legislature intended to restrict funds previously unrestricted in addition to the supplemental grant funds. No doubt the Legislature could have so provided; it simply did not.

We note that the federal government has often required the continuance of prior state and local funding levels by local school districts as a condition to receiving federal funds.

3.                                                                                                           90-505

There, however, Congress has expressly prohibited the use of federal funds as a replacement for state and local funds. (See former 20 U.S.C. §§ 241e(a)(3)(B), 3861 (b); *Bennett* v. *Kentucky Dept. of Educ.* (1985) 470 U.S. 656 [84 L.Ed.2d 590, 105 S.Ct. 1544]; *Dept. of Educ., State of Hawaii* v. *Bell* (9th Cir. 1985) 770 F.2d 1409.) As stated by the United States Supreme Court in *Bennett* v. *Kentucky Dept. of Educ.*, *supra*, 470 U.S. 656, 665-666:

> "`Congress must express clearly its intent to impose conditions on the grant of federal funds so that the States can knowingly decide whether or not to accept those funds.' [Citation.] The requisite clarity in this case is provided by Title I; States that chose to participate in the program agreed to abide by the requirements of Title I as a condition for receiving funds. [Citation.] There was no ambiguity with respect to this condition. . . ."

No similar express prohibition is found in sections 54760-54761 or in any other state statute.

We thus conclude that when a school district uses supplemental grant funds for one or more of the enumerated programs of section 54761, it is not statutorily required to maintain its prior level of unrestricted funding for the enumerated programs.

## 2. Administrative Limitations

The second question presented is whether the Department of Education ("Department") has the authority to require a school district to maintain its level of unrestricted funding for the enumerated programs of section 54761 as a condition of receiving supplemental grant funds. We conclude that the Department lacks such authority.

On November 6, 1989, the Department issued a Program Advisory which stated in part:

> " . . . districts will <u>not</u> be permitted to convert Supplemental Grant funds to General funds indirectly by replacing funds currently dedicated to one or more of the 27 identified programs with Supplemental Grant funds. . . .

> "In completing the year-end financial report, the Department will require districts to sign an assurance that all Supplemental Grant funds were expended to supplement current expenditures for one or more of the 27 programs and were <u>not</u> used to supplant general fund expenditures."

Did the Department have the authority to issue this directive?

In *Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, the Supreme Court examined the authority of the Department of Developmental Services to issue a directive concerning the use of state funds by recipient local agencies. The court analyzed the scope of the department's administrative authority in such circumstances, relying upon a long line of judicial decisions. It stated:

> "The scope of judicial review of quasi-legislative administrative action is well settled. (See, e.g., *J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 29; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748.) . . . . We have long recognized, of course, that `the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great

weight . . . .' (*Morris*, *supra*, at p. 748.)  Nevertheless, `[w]hatever the force of administrative construction, . . . final responsibility for the interpretation of the law rests with the courts.' (*Whitcomb Hotel* v. *Cal.Emp.Com.* (1944) 24 Cal.2d 753, 757; accord, *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 499; *Morris*, *supra*, 67 Cal.2d at p. 748.)  If, in interpreting the statute, the court determines that the administrative action under attack has, in effect, `alter[ed] or amend[ed] the statute or enlarge[d] or impair[ed] its scope,' it must be declared void. (*Morris*, *supra*, at p. 748; accord, *J.R. Norton Co.* v. *Agricultural Labor Relations Bd.*, *supra*, 26 Cal.3d at p. 29.) . . . .

"Administrative action that is not authorized by, or is inconsistent with, acts of the Legislature is void. (*California Welfare Rights Organization* v. *Carleson* (1971) 4 Cal.3d 445, 455; *Morris*, *supra*, 67 Cal.2d at p. 737.) . . . ." (*Id.*, at pp. 390-391, fn. omitted.)

Applying these principles, we find that the Department's Program Advisory conflicts with the provisions of sections 54760-54761.  It alters, amends, and enlarges the statutory language by requiring the prior use of unrestricted funds for the specified programs to continue.  The statutes do not impose such a condition.  Hence the Department has no authority to do so.

In answer to the second question, therefore, we conclude that the Department does not have the authority to require a school district to maintain its level of unrestricted funding for the enumerated programs of section 54761 as a condition of receiving supplemental general grant funds.

\* \* \* \* \*

APPENDIX

54761. In the 1989-90, 1990-91, and 1991-92 fiscal years, the Superintendent of Public Instruction shall provide supplemental grants to school districts.

(a) The supplemental grants shall be calculated in the following manner:

(1) For each school district the superintendent shall compute the sum of the following:

(A) The district's total revenue limit for the current fiscal year, including any equalization aid received pursuant to Section 42238.4 of the Education Code, as estimated by the superintendent at the time of the second principal apportionment for the current fiscal year.

(B) State aid received by the district for categorical education programs from the General Fund for the current fiscal year, as specified in clauses (i) and (ii), including funds appropriated for categorical programs by the act that adds this article to the Education Code, as estimated by the superintendent at the time of the second principal apportionment for the current fiscal year.

(i) The categorical education programs referenced in paragraph (b) shall include the following:

(I) High school pupil counseling.

(II) Home-to-home transportation, excluding special education transportation.

(III) School Improvement Program.

(IV) Vocational education pupil organizations.

(V) Specialized secondary schools.

(VI) Foster youth services.

(VII) Opportunity classes and programs.

(VIII) Pupil dropout prevention.

(IX) Economic Impact Aid.

(X) Gifted and talented education.

(XI) Miller-Unruh reading program.

(XII) Intergenerational education.

(XIII) Native American Indian education.

(XIV) Demonstration programs in reading and mathematics.

(XV) Partnership academies.

(XVI) Agricultural vocational education.

(XVII) Environmental education.

(XVIII) Instructional materials for kindergarten and grades 1 to 8, inclusive.

(XIX) Instructional materials for grades 9 to 12, inclusive.

(XX) Mentor teacher program.

(XXI) Beginning teacher support and assessment.

(XXII) Reader services for blind teachers.

(XXIII) Child nutrition.

(XXIV) School/law enforcement partnership.

(XXV) Educational technology program.

(XXVI) Small school district bus replacement.

(ii) The categorical programs in clause (i) shall not include the following:

(I) Special education programs operated pursuant to Part 30 (commencing with Section 56000).

(II) Reimbursement for the costs of court-ordered or voluntary desegregation programs pursuant to Article 2 (commencing with Section 42238) of Chapter 7 of Part 24.

(III) Regional occupational centers and programs operated pursuant to Article 1 (commencing with Section 52300) of Part 28.

(IV) Adult education programs operated pursuant to Chapter 10 (commencing with Section 52500) of Part 28.

(V) Child care and development services and preschool programs operated pursuant to Chapter 2 (commencing with Section 89200) of Part 6.

(2) The superintendent shall divide the sum computed pursuant to paragraph (1) by the second principal apportionment regular average daily attendance of the school district for the current fiscal year.

(3) The superintendent shall compute the statewide weighted average of the amounts computed pursuant to paragraph (2) for each of the sizes and types of school districts identified pursuant to subdivision (b) of Section 42238.4, as that section read on January 1, 1989.

(4) For each school district, from the amount computed in paragraph (3) for the appropriate size and type of school district, the superintendent shall subtract the amount computed in paragraph (2). If the result is less than zero, it shall be deemed to be zero. If the result is greater than one hundred dollars ($100) it shall be deemed to be one hundred dollars ($100).

(5) The superintendent shall multiply the amount computed pursuant to paragraph (4) by the district's second principal apportionment regular average daily attendance for the current fiscal year.

(b) (1) At the time of the first principal apportionment for the current fiscal year, except as provided pursuant to subdivision (c), the superintendent shall compute for each school district an estimate of the amount computed in paragraph (5) of subdivision (a), and shall apportion to each school district 75 percent of this estimate.

(2) At the time of the second principal apportionment for the current fiscal year, except as provided pursuant to subdivision (c), the superintendent shall apportion the balance of the amount computed pursuant to paragraph (5) of subdivision (a).

(c) In the event that the sum of the amounts computed pursuant to paragraph (5) of subdivision (a) exceeds the amount appropriated for purposes of this article, the amounts apportioned pursuant to subdivision (b) shall be reduced on a proportionate basis.

(d) Funds appropriated pursuant to this article shall be part of the base funding of each school district.

(e) All grant funding apportioned under this article to any school district shall be extended from that account only for the purpose of funding one or more of the programs enumerated in clause (i) of subparagraph (B) of paragraph (1) of subdivision (a).